SEXTON, Judge.
The defendant, Dennis E. Johnson, was charged with the offense of simple burglary. He was found guilty after jury trial of the offense of attempted simple burglary. Subsequently, he was charged with being a habitual offender, found guilty of being such, and sentenced to serve ten years imprisonment at hard labor.
On May 26, 1985, Officer Kim Angevine responded to a silent alarm at C-Marx Office Supplies on Morningside Street in Shreveport, Louisiana at approximately 2:14 a.m. Officer Angevine noticed that the front door had been forced open and was standing approximately two inches ajar. The officer went to the rear where noises like the sound of a chain link fence being shaken and the sound of someone rustling through the bushes which were intertwined with the fence were heard. She also heard a loud thud-like sound as if someone were falling to the ground and running away. The officer testified that she could not see the person or his clothing.
Officer Angevine radioed to the other responding units that there was a possibility that the subject had jumped the fence and was fleeing. She instructed the other units to go to the next street over, Prentiss Street, to see if they could find anyone running away from the general direction of the scene.
Clarence Lambeth, a resident of Prentiss Avenue whose house was located behind C-Marx Office Supplies, was awakened at approximately 2:00 a.m. when he heard something hitting the side of his house and his two Dobermans barking. He looked out the window and saw a person going over his fence. Although he could not identify the person, he remembered that the person was black and was wearing coveralls with a heavy jacket and ski cap. He also recalled that the person was stoutly built, close to six- feet tall, and weighed approximately 200 pounds. Mr. Lambeth saw the man go north on Prentiss Street after leaving his yard.
Based on the communication received from Officer Angevine, Officer Martin Amundson went to Prentiss Street with his partner, Ron Smith. There they encountered Mr. Lambeth who was standing in his front yard. After speaking briefly with him and obtaining a description of the man that Mr. Lambeth saw leaving his front yard, the officers went north on Prentiss Street to look for the subject.
About seven or eight houses down from Mr. Lambeth’s house, Officer Amundson noticed tennis shoes behind a red Volkswagen. Upon closer inspection, the officer saw the defendant lying on his side between the red Volkswagen and a fence. The officer stated that the defendant had his hand up under the Volkswagen and was “doing something.” As a precaution, the officer drew his weapon. The officer stated that initially the defendant did not move, but subsequently started slowly rising to his feet. As Officer Smith approached, Officer Amundson ordered the defendant back down on the ground as a precaution for his own safety. Officer Amundson holstered his gun as Officer Smith had his weapon turned on the defendant. However, the subject fled north on Prentiss Street. Officer Amundson tackled him about one-half a block away. At that point, he was arrested and read his rights.
Officer Amundson described the defendant as wearing a dark colored ski cap, a blue jean jacket, blue jeans and tennis shoes. Amundson also noticed that there was a flashlight in his right back hip pocket. Additionally, the officer testified that the defendant was sweating and breathing heavily. He also remembered that the defendant’s jeans were covered with grass and dirt. Following the arrest of the defendant, Officer Amundson returned to the red Volkswagen and found a pair of tan leather gloves underneath it. Officer An-gevine located a crowbar in the area where she heard the rustling sounds approximately 20-30 feet from the fence to the rear of C-Marx Office Supplies.
*349 Mark Grau, an employee of C-Marx Office Supplies, testified that he could not tell if anything had been taken from the business. However, he noted that there was a hole knocked in the sheetrock where someone apparently had tampered with the alarm. Other than the alarm and a box of parts that had been knocked off the alarm, he saw nothing else that had been disturbed.
Upon subsequent investigation, a shoe-print was found on manilla folders which were located on the floor near the alarm. Richard Beighley, a criminalist from the Northwest Criminalistics Laboratory in Shreveport, opined that the tread pattern on the defendant’s tennis shoes was not inconsistent with the print on the manilla folder. He concluded that the print on the folder was either made by a tennis shoe worn by the defendant or another of a similar tread pattern.
ASSIGNMENT OF ERROR NOS. 1 AND 2
Through these related assignments of error, defendant assails the constitutionality of the racial composition of both the general jury venire and the petit jury. Defendant specifically argues that his Sixth and Fourteenth Amendment right to a jury drawn from a cross-section of the community and his right to equal protection under the law were violated when only three blacks were present in the general venire, and when the only black called to the jury box for voir dire questioning was peremptorily excused by the state.
In support of his contention, defendant cites Batson v. Kentucky, — U.S. -, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) which reaffirms the principle that a state’s purposeful or deliberate denial to Negroes of participation of juries on account of their race violates the Equal Protection Clause. Batson v. Kentucky, however, overruled the evidentiary formulation previously expressed in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), for establishing a prima facie case of purposeful discrimination. The Supreme Court held that Swain, which had been interpreted as requiring proof of systematic exclusion of blacks over a number of cases, placed upon a defendant a crippling burden of proof, inconsistent with the standards for assessing a prima facie case under the Equal Protection Clause. The U.S. Supreme Court stated the following new test:
To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S., [482] at 494, 97 S.Ct., [1272] at 1280 [51 L.Ed.2d 498], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant’s race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits “those to discriminate who are of a mind to discriminate.” Avery v. Georgia, supra, 345 U.S., [559] at 562, 73 S.Ct., [891] at 892 [97 L.Ed.2d 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venieremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
* * * * * *
Once the defendant makes a prima fa-cie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.
In Batson, the defense counsel moved to discharge the jury before it was sworn on the ground that the prosecutor’s removal of the black veniremen violated the defendant’s constitutional rights. In Batson, the U.S. Supreme Court noted that the defendant made a timely objection to the prosecutor’s removal of all black persons on the venire and held that because the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his actions that reversal was mandated. *350 Consequently, defendant argues that his conviction and sentence should be reversed and set aside in accordance with the holding of Batson.
The instant case is a “pipeline” case since the trial was held on January 18, 14 and 15, 1986, the sentence was received on February 3, 1986, and the Batson v. Kentucky opinion was rendered April 30, 1986. The Louisiana Supreme Court has very recently expressed the view that Batson was not intended to be applied retroactively. State v. Ford, 489 So.2d 1250 (La.1986).
Counsel for defendant made a timely objection as to the composition of the jury venire and also upon the exclusion of the only black juror called for questioning. Notwithstanding, the latest pronouncement binding on this court is that expressed in State v. Ford, supra, which fails to apply Batson v. Kentucky to eases in the pipeline and adheres to the prior test establishing in Swain v. Alabama. Consequently, defendant’s claim should be judged under that standard. The defense did not show a systematic exclusion of blacks, nor a longstanding policy of the office of the district attorney to exclude black jurors. Therefore, the state was entitled to exercise its peremptory challenges as it chose. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment of error, appellant argues that the trial court erred in failing to grant a mistrial based upon an alleged reference to “other crimes” evidence by the prosecutor during voir dire.
The following exchange between the prosecutor and prospective juror prompted the mistrial motion.
Q If you are convinced beyond a reasonable doubt, Mr. Vedlitz, that Mr. Dennis Johnson was burglarizing that night and burglarizing C-Marx Office Supplies, would you have any problem in voting and finding him guilty?
A Not at all.
The trial court noted that using the term “burglarizing” could, if there was knowledge of other events, draw the attention of the party hearing that term to conclude that “burglarizing” was in reference to other events. However, the court determined that it did not draw the conclusion as implied by the defense when it heard the statement and therefore denied the motion for mistrial. An admonition was neither requested nor given.
A mistrial is mandated on motion of the defendant when an assistant district attorney makes a direct or indirect reference to another crime committed by the defendant within the hearing of the jury when evidence of the other offense is otherwise inadmissible. LSA-C.Cr.P. Art. 770(2).
The trial court was in the best position to view the evidence. That court concluded that the remark, taken in the context in which it was spoken, referred to the instant offense only and did not raise the inference of other burglaries committed that night. We agree that the remark taken in the context spoken does not necessarily infer that the defendant engaged in more than one burglary. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4
Defendant asserts that the trial court committed reversible error in denying his motion for mistrial based on an alleged reference to other crimes evidence by Officer Angevine.
During the prosecution’s direct examination of Officer Kim Angevine, the prosecution asked the officer if she had gone back to the scene of the crime to see if she could discover or find other evidence:
Q And describe what you did in that regard.
A We got there. We combed the area and found in the back yard or back yard of the business next to C-Marx, we found a crow bar lying there and about two to three hundred feet away we found a strong box and two *351 money bags laying up on the railroad track which is—
Defense counsel objected and requested a mistrial on the grounds that Officer An-gevine’s reference to the strong box and money bags was an improper reference to inadmissible other crimes evidence. The court found that the statement was not so prejudicial as it could not be cured by an admonition to the jury to disregard the testimony. Therefore, the judge denied the motion for mistrial and offered to give an admonition to the jury. This offer was declined by defense counsel.
A police officer is not a “court official” for purposes of LSA-C.Cr.P. Art. 770. State v. Carter, 412 So.2d 540 (La.1982); State v. McGuffey, 486 So.2d 1101 (La.App. 2d Cir.1986); State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied 456 So.2d 171 (1984). The purpose behind excluding other crimes evidence is to insure that the defendant will not be presumed to be guilty of the instant crime because of past offenses. In the absence of clear prejudice, a witness’s unsolicited reference to other crimes by the accused warrants only an admonition that the jury disregard the objection or remark. However, a prejudicial remark by an experienced police officer should be viewed with considerable concern as to the fairness of the trial. It may require granting a mistrial, especially if the remark was precipitated by or should have been anticipated by the district attorney. Nevertheless, the decision as to the necessity of granting a mistrial under the circumstances is left to the sound discretion of the trial court. State v. Goods, 403 So.2d 1205 (La.1981); State v. McGuffey, supra.
In the instant case, there is no showing that the response of Officer Angevine was intentionally unresponsive or was otherwise intended to present improper evidence to the jury. Since the officer’s statement was not improperly intended, she is not held to the same standard as “court officials.” Therefore, LSA-C.Cr.P. Art. 770(2) does not apply to her comments and a mandatory mistrial is not required. The decision on the motion for mistrial is instead governed by LSA-C.Cr.P. Art. 771, which does not require a mistrial unless the remark was solicited by a prosecutor or a mistrial was necessary to assure a fair trial and the court is satisfied that an admonition is not sufficient to achieve that end.
While the statement may have raised the slightest of innuendos that another crime had occurred which involved the money bag and strong box, such was clearly not a primary indication from the statement. The trial judge’s conclusion that an admonition was sufficient to assure the defendant a fair trial is reasonable under the circumstances under which this statement was given. Consequently, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5
In this assignment of error, defendant contends that the trial court erred in failing to grant a mistrial based on LSA-C.Cr.P. Art. 772 which states:
Art. 772. Comment on facts by judge in jury’s presence prohibited
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
During the prosecution’s rebuttal argument, defense counsel objected to the prosecution’s comment about the issue of race. After a conference at the bench, the trial court made the following remarks in the presence of the jury:
THE COURT: I just as soon the jury hear what I’m saying because they are not dumb and you both know it. Now, the reference to race was out of hand. There has not been an implication of that and I will sustain your objection. Proceed with argument, Counsel, and let’s proceed with the case.
Defendant asserts on appeal, as he did before the trial court, that a mistrial was warranted on the basis that the trial *352 court’s comments left the jury with the impression that both the defense counsel and the prosecution thought that the jury was dumb. The court denied the motion for mistrial. However, upon a request by both counsel, the trial court rendered a more detailed version of these remarks.
It is apparent from the colloquy which transpired between the attorneys and the trial court that both the defense counsel and the assistant district attorney took offense to the comments. The prosecutor as well as defense counsel noted that he took offense at the tone of voice with which the trial court ruled on their objections. Additionally, the prosecutor noted that he felt that his rapport with the jury had been disturbed in that they would seemingly no longer look him in the eye when he spoke to them. These intangibles are, of course, not obvious on the face of the record. However, it is clear that if prejudice occurred, it would have operated equally against both sides, cancelling out any bias against a particular side, and should not have affected the verdict. Additionally, it appears that the curative instruction given by the trial court sufficiently explained the judge’s comments so as to obviate any remaining prejudice.
In short, the remark was not one from which the jury could infer any expression of the trial judge’s opinion concerning any relevant issues of fact. The judge’s comment in no way permitted a reasonable inference that it expressed or implied the judge’s opinion as to a material issue or to defendant’s guilt or innocence. Neither did the mildly intemperate response by the trial court seemingly affect the verdict. This assignment of error has no merit.
ASSIGNMENT OF ERROR NOS. 6 AND 7
Since these assignments of error made by appellate counsel were not briefed nor argued in brief, they are considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976).
ASSIGNMENT OF ERROR NO. 8
By this assignment of error, defendant contends that his sentence is excessive in violation of the Louisiana Constitution.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied 439 So.2d 1074 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La.App.2d Cir.1985).
Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. *353 1983), writ denied 435 So.2d 433 (La.1983). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra.
On appeal, defendant’s specific complaint is that the trial court failed to give proper consideration to his past mental problems and that due to this failure, he received an excessive sentence in violation of LSA-Const. Art. I, § 20 (1974).
In imposing sentence, the trial court noted that the fact that there was no weapon found on the defendant’s person at the time of the arrest or in the vicinity of the offense as a mitigating fact. The trial court also considered the fact that no injuries were sustained during the defendant’s crime. Although the court noted that there was some degree of damage to the property in question, he characterized the damage as minimal.
However, the trial court gave particular emphasis to the defendant’s prior criminal history which was described as extensive, indicating multiple involvement in criminal activity over the past years. The trial court stated that the defendant’s record indicated three or four felony convictions. The trial court stated the belief that the defendant would be a risk to the public upon being released as support for its view that defendant was in need of correctional treatment in a custodial environment. The court also noted the defendant’s ineligibility for probation.
The trial court specifically considered and then rejected the defendant’s argument that his mental instability should be a factor in mitigation of his sentence. The factual basis for this conclusion is adequately supported by the record. Moreover, the trial court’s articulation of the sentence imposed adequately supports the trial court’s sentencing choice. This assignment of error lacks merit.
For the above the foregoing reasons, we affirm the conviction and sentence of the defendant.
AFFIRMED.