**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rondell Herbert GARRISON,**
**Defendant–Appellant.**

**No. 87–7649.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1988.

Decided June 7, 1988.

Rehearing and Rehearing In Banc
Denied Sept. 7, 1988.

---

Stephen Jon Cribari, Deputy Federal Public Defender (Fred Warren Bennett, Federal Public Defender, on brief), for defendant-appellant.

Katharine J. Armentrout, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., on brief), for plaintiff-appellee.

Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

BUTZNER, Senior Circuit Judge:

Rondell Herbert Garrison alleges that the prosecutor at his trial for bank robbery used peremptory strikes to remove black persons from his jury in a discriminatory manner, in violation of his fourteenth amendment rights as detailed in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987). The trial court held that the peremptory challenges were exercised for race-neutral reasons. Because the trial court's findings of fact are not clearly erroneous, we affirm.

I

This appeal involves the retroactive application of *Batson.* Garrison was convicted of bank robbery. While his appeal was

pending, the Supreme Court decided *Batson,* which held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89, 106 S.Ct. at 1719. This court held the appeal without argument until the Supreme Court's decision in *Griffith* established that *Batson* was to be applied retroactively to cases pending on direct review or not yet final. 107 S.Ct. at 716. We then remanded the case to the district court for resolution of the dispute over the government's exclusion of black jurors. The district court conducted an adversary hearing, received affidavits, and heard argument of counsel. In these respects, the district court followed procedures we approved in *United States v. Woods,* 812 F.2d 1483 (4th Cir. 1987). The district court also requested the prosecutor to submit notes made during the voir dire for *ex parte* inspection to determine whether they shed additional light on the prosecutor's recollection of a voir dire that took place almost two years before the hearing. Garrison's primary assignment of error pertains to the *ex parte* inspection of the notes. He also complains of the lack of a full adversary hearing and asserts that the district court's findings are erroneous.

## II

After six jurors were struck for cause, a venire of thirty-five persons remained, of whom three were black. Garrison does not challenge the racial composition of the venire. Three of the government's six peremptory challenges were used to strike the three remaining black veniremen. As a result, Garrison was tried by an all white jury. The government concedes that Garrison, who is black, has made out a *prima facie* case of discrimination under *Batson* but offers what it believes are race-neutral explanations of its exercise of its peremptory challenges.

*Voir dire* was conducted by questions posed to the veniremen as a group, with only those individuals who found a question applicable to themselves responding. Relatively few jurors responded to any of the questions, and several of these were stricken for cause. As a result, the prosecutors' decisions concerning the use of their peremptory challenges were necessarily based in significant part on information from the questionnaires that the jurors returned to the clerk's office, on impressions received through observing the conduct and demeanor of the jurors during the *voir dire* process, and on professional judgment concerning other factors likely to make jurors more or less receptive to the government's case.

The government asserts that it struck juror number 110, who was black, because he, like the defendant, was a young male. A white male juror of the same age was also stricken. The prosecutors expressed a concern that young male jurors would tend to be more sympathetic to the defendant's plight. The government asserts that it struck jurors 369 and 372, two black women, because they chatted with each other during the *voir dire* process and gave other indications of boredom and disdain for the process. Additionally, both these jurors were under age 30, and the government again felt that similarity in age might incline them to be sympathetic to the defendant. Finally, juror 372 was unemployed, and the government states that it "almost always" prefers to have employed persons on a jury.

The government struck two other white jurors, one male and one female. They were aged 20 and 22 respectively; the man had previously pled guilty to a crime, and the woman was perceived by the prosecutors to be "anti-government" for several reasons.

As to those jurors struck on account of age, Garrison argues first that the category "young" is too vague to provide a legitimate reason for removing black persons from the jury, and second that systematic exclusion of young people from juries is in itself impermissible discrimination against an identifiable group.

While the category "young" may indeed be vague in some contexts, there is no such problem in this case. The only black juror excluded solely because of age and sex was aged 25—close in age by any measure to the 23-year old defendant. Contrary to Garrison's contention, age, in itself, was not the basis of the government's strikes. It was the similarity in age between the defendants and the jurors that caused the government to be apprehensive of possible sympathy for the defendant. Neither the Supreme Court nor this circuit has ever held that striking jurors because their age is similar to that of the defendant is impermissible discrimination.

Garrison's counsel submitted an affidavit stating that he did not remember seeing jurors 369 and 372 chatting during *voir dire* and that he observed nothing in their demeanors which called their fairness into question. Because he contradicted these assertions by the prosecuting attorneys, he argues that the trial court was obliged to hold a full evidentiary hearing to determine the actual facts before ruling.

Garrison's insistence on an evidentiary hearing in which prosecutors and defense attorneys and possibly other witnesses would be examined and cross-examined misconceives the *Batson* inquiry. Although a district court could conduct such a hearing if it believed circumstances warranted it, *Batson* does not require this intrusion on the trial proceedings. When, as here, the defendant has made out a *prima facie* case of a discrimination, *Batson* requires the prosecutor to "articulate a neutral explanation related to the particular case ..." 476 U.S. at 98, 106 S.Ct. at 1723. The explanation given by the prosecutor satisfied *Batson*'s requirement for neutrality. A prosecutor is justified in striking jurors that he or she perceives to be inattentive or uninterested. If the trial court believes the prosecutor's explanation, a reviewing court ordinarily should give this credibility finding "great deference." 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.

In agreement with the district court, we hold that the explanations offered by the government for its peremptory challenges of black jurors constitute race-neutral reasons sufficient to satisfy the requirements of *Batson*. We also hold that the district court's finding that the prosecutor's explanation was creditable is not clearly erroneous.

### III

 We conclude that the district court's *ex parte* examination of the prosecutor's notes does not warrant reversal. The Supreme Court in *Batson* expressly refrained from fashioning a procedure to be followed by the trial court in making its determination. 476 U.S. at 99–100 n. 24, 106 S.Ct. at 1724 n. 24. The Sixth Circuit has approved *ex parte* submission of explanations by the government once a defendant has made out a *prima facie* case of discriminatory use of peremptory challenges. *United States v. Davis*, 809 F.2d 1194 (6th Cir.1987). We, however, agree with the Ninth Circuit that the important rights guaranteed by *Batson* deserve the full protection of the adversarial process except where compelling reasons requiring secrecy are shown. *United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir.1987). Like that circuit, we recognize that instances may arise in which to reveal the grounds for striking a juror would unduly prejudice the government. For example, an *ex parte* hearing may be necessary if by coincidence the government is conducting an undercover investigation of the juror's likely involvement in other crimes. But the government must make a substantial showing of necessity to justify excluding the defendant from this important stage of the prosecution. *Thompson*, 827 F.2d at 1258.

Confronted by a similar situation—an *ex parte* consideration of the prosecutor's explanation—the Seventh Circuit concluded that the procedure "passed constitutional muster." Nevertheless, Chief Judge Bauer, writing for the court, cautioned:

[W]e believe that adversarial hearings are the appropriate method for handling most *Batson*-type disputes. In this case, for example, we believe that the prosecution could have explained its reasons for

excluding the four black venirepersons in open court. Thus, while we hold that it is up to the trial judge to decide what procedure is best-suited for a particular case, we trust that the trial judge will utilize an adversarial procedure whenever possible.

*United States v. Tucker,* 836 F.2d 334, 340 (7th Cir.1988). Similarly, the *ex parte* examination of the prosecutor's notes in this case does not warrant reversal or remand for a new hearing.

The notes neither contradicted nor added anything of substance to the government's explanations offered and debated at length in open court. The district court in its memorandum denying a new trial based its decision on factors of which Garrison was fully aware and which he had been given ample opportunity to rebut.

The circumstances of this case are unlikely to be repeated in current trials. Because an objection based on *Batson* must be raised immediately, rarely will the court need the prosecutor's notes to see if they cast any light on the prosecutor's recollection of the reasons for peremptory strikes. But if the court decides to consider any notes, other documents, or statements pertaining to the prosecutor's explanation, we, like the Seventh Circuit, counsel that a trial court should ordinarily conduct adversary, rather than *ex parte,* proceedings.

## IV

■■■ Finally, Garrison contends that the trial court erred in permitting his state probation officer to testify as to his weight loss after the time of the robbery. Because cross-examination to impeach the probation officer's credibility might have exposed the fact that Garrison was on parole at the time of the bank robbery, he argues that his sixth amendment right to cross examine was restricted and that the probative value of the officer's testimony was substantially outweighed by the danger of unfair prejudice, requiring that it be excluded under Federal Rule of Evidence 403.

The trial court was fully aware of the hazards surrounding testimony by a defendant's parole officer and did exclude some proffered testimony on the basis of Rule 403. Before admitting the testimony concerning weight loss, the court waited until most of the government's evidence was in, so as to be better able to judge the importance of the offered testimony. The court's decision to admit that testimony was well within its discretion. *See United States v. Farnsworth,* 729 F.2d 1158, 1160–61 (8th Cir.1984). Nor was the defendant's right of cross-examination unduly restricted. The witness's identity as parole officer was not revealed by the government, and Garrison has not explained why effective cross-examination could not be conducted without touching on that fact. In the event, Garrison's counsel did cross examine the witness in considerable detail, without revealing that she was Garrison's probation officer.

Garrison's *pro se* motion to file a supplemental brief is granted. His motion for a writ of mandamus is denied.

The judgment of the district court is affirmed.