**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Isaac James TINDLE,**
**Defendant–Appellant.**

**No. 87–6096.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1988.

Decided Oct. 25, 1988.

Rehearing and Rehearing In Banc
Denied Dec. 20, 1988.

---

Terrance G. Reed (Timothy D. Junkin, Henry W. Asbill, L. Barrett Boss, Asbill, Junkin, Myers & Buffone, Chartered, Washington, D.C., on brief), for defendant-appellant.

Ty Cobb, Sp. Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Donna Helen Triptow, Asst. U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and MacKENZIE, Senior District Judge from the Eastern District of Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

In *United States v. Tindle*, 808 F.2d 319 (4th Cir.1986) we affirmed the various heroin related convictions of the appellant, but we remanded the case to the district court pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) to decide whether there was any merit to Tindle's claim that blacks were systematically excluded from his trial jury. Following remand, the district court conducted two conferences with the attorneys. The appellant's attorneys filed a motion for a new trial, and thereafter a supplemental pleading and an affidavit. The United States Attorney submitted a public filing outlining his reasons for exercising the peremptory challenges in the case, and he also submitted an *in camera* filing. Thereafter, the district court heard oral argument and issued a twenty-three page memorandum opinion denying the motion for a new trial, denying the appellant's request for an evidentiary hearing in the case, and finding that the United States Attorney had not systematically excluded black jurors from the trial jury in violation of Tindle's equal protection rights.

The appellant has appealed contending that it was error for the trial judge to allow the government to discharge its burden under *Batson* with some evidence being submitted to the court *in camera*, and in failing to provide the appellant with an evidentiary hearing at which he could call the government attorneys and others as witnesses. We find no merit to these claims, and we affirm.

I

The facts underlying Tindle's conviction are more completely outlined in our prior opinion, but they reflect a drug operation that was extensive, that generated large sums of money, and that was accompanied by widespread violence. Tindle, a black male, was indicted with thirteen co-defendants for various narcotic offenses. Prior to trial most of the defendants entered pleas of guilty, and only Tindle, Harris and Gladden went to trial. Several days into the trial, both Harris and Gladden changed their pleas to guilty.

In the United States District Court for Maryland attorneys select jurors from a list of venire members provided by the Clerk of Court. This list contains the name, age, address, marital status and employment of the prospective juror. The list does not contain any indication as to race. In exercising peremptory challenges the attorneys strike from the list. At Tindle's trial the defendants were granted three extra peremptory challenges for a total of thirteen and the United States was allowed six under Fed.R.Crim.P. 24(b). The trial judge conducted the voir dire of the venire and then permitted the attorneys to leave the courtroom to discuss and decide how to exercise their challenges. The peremptory challenges were made by striking the name of the challenged venire person from the list. When the attorneys returned to the courtroom they submitted to the courtroom deputy clerk their separate list showing their peremptory challenges. The remaining venire persons were called and became the trial jury.

The list of prospective jurors submitted to counsel by the courtroom deputy clerk contained thirty-one names. The defendants struck thirteen, the government struck six. Of its six peremptory challenges, the government used five to strike black jurors, and the jury, which tried Tindle, was entirely white. Upon remand the trial judge concluded that this use of five peremptory challenges against black jurors made out a prima facie case of discrimination under *Batson*. At this point, the trial judge advised the United States Attorney that the burden had shifted to him to come forward with a racially neutral explanation for challenging each black juror. The record disclosed that the government had exercised its peremptory challenges as follows:

Juror No. 78—John A. Smallwood, Sr., a black.

Juror No. 91—Riley Brothers, Jr., a black.

Juror No. 102—Walter H. Johnson, Jr., a black.

Juror No. 54—Dennis J. Sesplankis, a white.

Juror No. 295—Veronica Bell, a black.

Juror No. 314—Arlene A. Granderson, a black.

The government submitted an affidavit of Lt. William Merritt of the Metropolitan District of Columbia Police Department, who was the case agent in the investigation and prosecution of this case, and he was present at the prosecution table throughout the trial. He participated with the government attorneys in selecting the jury and deciding which members of the venire to strike. Lt. Merritt is black and is a twenty-year veteran of the police department, and in his affidavit he swears that at no time was race mentioned as a factor in the exercise of the government's peremptory challenges, and that he agreed with the challenges as exercised. His affidavit also states that he would not be a party to any effort to use race as a factor to eliminate black jurors. Merritt's affidavit also explains the reasons for exercising most of the peremptory challenges used by the government and such reasons are racially neutral.

Before the district judge, the government attorney explained his strategy in selecting the jury and his use of his challenges. He also submitted to the judge *in camera* the notes used by him in the selection of the jury, and certain other sensitive information that he relied upon in selecting the jury. He asserted that this information, if made public, could embarrass and endanger individuals, including venire persons, and that certain of the information was work product.

The district court found in its order that the reasons advanced by the government articulated a neutral explanation for each of the peremptory challenges, and that these explanations were clear, reasonably specific and met the prosecution's burden under *Batson* of rebutting the defendant's *prima facie* case. The court also concluded that these explanations were not pretextual.

The defendant's presentation was marked by a confusion as to the race of certain jurors and as to which side had exercised the challenge. The defendant also submitted an affidavit of one David Hughes dated April 1, 1987, more than three years after the trial, in which he swore that Mr. Cobb, the Assistant United States Attorney trying the case, advised Hughes that he had purposely struck all of the blacks from the jury. In these matters the trial judge determines issues of credibility, and it is easy to see why no weight was given to this affidavit. Hughes was co-conspirator of Tindle, he had been used by Tindle to launder large sums of money, and he had already entered a guilty plea and been sentenced for his part in the offenses covered by the indictment. Hughes gave no indication of why Mr. Cobb, or any other government attorney, would make such a confession to a convicted felon, and why, if this charge were true, he waited over three years to come forward. An earlier Hughes affidavit was attached to a supplemental brief submitted to our court when the first appeal was

argued in August, 1985, and it made no mention of such a statement by Mr. Cobb.

At the remand hearing the government explained that it had challenged Juror Veronica Bell, who was black, thirty-five years of age, divorced and employed as a security officer at Mondawmin Mall in Baltimore, because this mall has long been associated by law enforcement officers with narcotics trafficking, and narcotics organizations purchased cutting materials and other supplies at the mall. At a recess prior to jury selection, Juror Bell was observed conversing with individuals associated with the co-defendant Harris. This explanation was found by the district court to be neutral, not pretextual and true. We agree.

Arlene Granderson was a black female, forty-five years of age and employed at the Department of Health and Human Services. The government explained its strike of her because her name closely resembled that of Anthony Grandison, who had been a defendant in a trial involving the murder of two government witnesses. The Grandison trial had been handled by Assistant United States Attorney Cobb, the same person representing the government in the Tindle case. We agree with the district judge that this was a neutral and non-pretextual reason to challenge.

Juror Riley Brothers, Jr. was a black, thirty-six years of age and a bus driver working for the Washington Metropolitan Transit Authority. He lived in Suitland, Maryland and Tindle's telephone records indicated a large number of calls to participants in Tindle's narcotics operation in Suitland. Also, Juror Brothers was similar in size and appearance to the defendant Gladden, and Gladden had argued that he had been mistakenly identified and was being prosecuted solely because of his size and appearance. We agree with the district judge that this was a neutral and non-pretextual reason for the government to exercise a challenge.

Juror Walter H. Johnson, Jr. was listed as being thirty years of age and a construction laborer residing in Beltsville, Maryland. The master jury list showed him unemployed, but the government thought that he had been employed in an area of Prince George's County near the Tindle narcotics operation. The government did not have a record of Johnson's race and since the selection of the jury was from a list of names that does not indicate race, and the challenges were exercised out of the presence of the venire, the court found that this would not be unusual, and that this was a neutral and non-pretextual reason to exercise a challenge. We agree.

Juror John A. Smallwood, Sr. was listed as a horse trainer, and the government explained that this challenge was made because of his employment. Two government witnesses were horse trainers and they had been involved in illegal activities with Tindle and a co-defendant. These witnesses admitted their fraudulent conduct on the stand, and the government excused horse trainer Smallwood because of its fear that he would be contemptuous of these witnesses and not accept their testimony. The district court found that this was a neutral and nonpretextual reason to exercise a challenge, and we agree.

Under *Batson* a defendant may establish a *prima facie* case by showing that he is a member of a cognizable racial group, and that the prosecutor exercised peremptory challenges to remove members of his race from the venire. The burden then shifts to the government to come forward with neutral explanation for its challenges of black jurors. At this point:

> The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

476 U.S. at 98, 106 S.Ct. at 1723. These are factual findings and, under *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), they may only be disturbed on appeal if they are found to be clearly erroneous. *United States v. Hamilton*, 850 F.2d 1038 (4th Cir.1988). Applying this standard, we conclude that the trial court's determinations are not clearly erroneous.

## II

Appellant claims that a *Batson* inquiry requires an evidentiary hearing at which he would be allowed to call witnesses, and to cross-examine the prosecutors, and, in the present case, cross-examine Lt. Merritt. There is no absolute right to an evidentiary hearing. *Batson* answers this claim as follows:

> In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today.

476 U.S. at 99–100 n. 24, 106 S.Ct. at 1724 n. 24.

We have held that the conducting of an evidentiary hearing is within the sound discretion of the district court. In *United States v. Garrison*, 849 F.2d 103 (4th Cir. 1988) we stated:

> Garrison's insistence on an evidentiary hearing in which prosecutors and defense attorneys and possibly other witnesses would be examined and cross-examined misconceives the *Batson* inquiry. Although a district court could conduct such a hearing if it believed circumstances warranted it, *Batson* does not require this intrusion on the trial proceedings. When, as here, the defendant made out a *prima facie* case of a [sic] discrimination, *Batson* requires the prosecutor to 'articulate a neutral explanation related to the particular case....' 476 U.S. at 98 [106 S.Ct. at 1723]. The explanation given by the prosecutor satisfied *Batson's* requirement for neutrality. The prosecutor is justified in striking jurors that he or she perceives to be inattentive or uninterested. If the trial court believes the prosecutor's explanation, a reviewing court ordinarily should give this credibility finding 'great deference.' 476 U.S. at 98 n. 21 [106 S.Ct. at 1724 n. 21].

*Garrison*, 849 F.2d at 106.

In the present case the trial judge, who conducted the *Batson* inquiry, was the same judge who had tried the Tindle case. He had conducted the voir dire examination of the prospective jurors and had observed the selection process. He stated that he had reread the transcript of the entire voir dire proceedings and found:

> there is no indication or even a hint from any of the questions requested by the government or otherwise of any intent by government counsel to discriminate in the jury selection process. It should further be noted that the government (as well as the defendants) exercised its strikes from the jury list itself and even out of the presence of the jury. It is therefore understandable in this case while there was some uncertainty in the mind of government counsel concerning the race of some of the prospective jurors.

Joint Appendix at page 133.

The trial judge found that there was no reason shown in the present case for an evidentiary hearing. The defendant had indicated that he would like to call as witnesses the two prosecutors, Lt. Merritt, the defendant himself, one of the defense counsel, co-defendant David Hughes and several other witnesses, who were alleged to have been present during the voir dire proceedings. The trial court decided that such an extended hearing was not necessary and that the matter could be decided upon the record because it was sufficient to decide the issue presented. The court stated that it would give little credibility to the Hughes affidavit, and we can certainly understand this. The court also indicated that any testimony by the defendant would be considered in the light of prior proceedings. At sentencing the court advised Tindle:

> I would further note that you testified at the trial. I can say to you, Mr. Tindle, that I have seldom heard more untruthful testimony presented under oath in this Courtroom than what I heard during your testimony. The jury did not believe you and neither did I. This is a proper consideration, in deciding upon an appropriate sentence in this case, since you sought to affect the administration of justice by false testimony.

Joint Appendix at page 140.

There was no abuse of discretion in the district court's refusal to conduct an evidentiary hearing in this case. *Batson* does

not require a trial within a trial, and purposely left to lower courts the method of conducting inquiries into *Batson* -type claims.

## III

■ Appellant contends that the district court erred in refusing to produce and allow his attorneys to examine the material submitted by the United States Attorney to the district court *in camera.* The district court made the following statement regarding its use of the *in camera* material:

Finally, the *in camera* submission of the government fully supports its contention that its reasons for exercising the strikes in question were not pretextual. This submission includes, *inter alia*, a copy of the jury list used by government counsel with contemporary notes made by the prosecutors alongside each of the jurors listed. Close examination of these notes reveals that the reasons given by government counsel for these strikes were not pretextual. The notations made contemporaneously with the exercise of the strikes in question fully support the explanations given by government counsel for exercising these peremptory strikes.

Joint Appendix at page 133.

At the hearing the district court indicated that it would decide whether to give the defendant access to the *in camera* material. In its order it decided against access and stated:

In this particular case, the *in camera* submission made by the government included extremely sensitive matters as well as work product materials of the government attorneys. Portions of the sensitive materials submitted relate to threats and attempted intimidation fostered by defendant Tindle himself. Other portions relate to notes made by government counsel on the jury list itself which reveals strategy employed by government counsel during the trial of the case. Were the court to permit counsel for defendant to have access to the *in camera* submission and were a new trial to be then ordered, defendant would have

access to materials to which he would not otherwise be entitled either under Rule 16, F.R.Crim.P., or under the Jencks Act.

Joint Appendix at pages 137–38.

We have reviewed the materials submitted *in camera* and we agree with the district court's conclusion that this material should not be delivered to defense counsel. We faced this same claim in *Garrison, supra*, and stated:

We conclude that the district court's *ex parte* examination of the prosecutor's notes does not warrant reversal. The Supreme Court in *Batson* expressly refrained from fashioning a procedure to be followed by the trial court in making its determination. 476 U.S. at 99–100 n. 24 [106 S.Ct. at 1724–25 n. 24]. The Sixth Circuit has approved *ex parte* submission of explanations by the government once the defendant has made out a *prima facie* case of discriminatory use of peremptory challenges. *United States v. Davis*, 809 F.2d 1194 (6th Cir. 1987). We, however, agree with the Ninth Circuit that the important rights guaranteed by *Batson* deserve the full protection of the adversarial process except where compelling reasons requiring secrecy are shown. *United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir.1987). Like that circuit, we recognize that instances may arise in which to reveal the grounds for striking a juror would unduly prejudice the government. For example, an *ex parte* hearing may be necessary if by coincidence the government is conducting an undercover investigation of the juror's likely involvement in other crimes. But the government must make a substantial showing of necessity to justify excluding the defendant from this important stage of the prosecution. *Thompson*, 827 F.2d at 1258.

Confronted by a similar situation—an *ex parte* consideration of the prosecutor's explanation—the Seventh Circuit concluded that the procedure 'passed constitutional muster.' Nevertheless, Chief Judge Bauer, writing for the court, cautioned:

[W]e believe that adversarial hearings are the appropriate method for handling most *Batson*—type disputes. In this case, for example, we believe that the prosecution could have explained its reasons for excluding the four black venire persons in open court. Thus, while we hold that it is up to the trial judge to decide what procedure is best-suited for a particular case, we trust that the trial judge will utilize an adversarial procedure whenever possible.

*United States v. Tucker*, 836 F.2d 334, 340 (7th Cir.1988).

*Garrison*, 849 F.2d at 106–07.

In the Tindle case the prosecutors explained most of their reasons for exercising their peremptory challenges in open court, and we find that the district judge did not err in allowing some of the reasons to be supported by the materials submitted *in camera*. Compelling reasons for the use of this procedure were clearly present in this case.

The judgment of the district court is affirmed.

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring in part and dissenting in part:

Protecting an individual's constitutional right to a fair trial is a solemn responsibility of the federal courts. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court ruled that the government's privilege to strike individual jurors through peremptory challenges is limited by the Equal Protection Clause, and that the government violates equal protection guarantees if it challenges potential jurors solely on account of their race. *Id.* at 89, 106 S.Ct. at 1719. A *Batson* violation obviously harms the defendant, who has "the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." *Id.* at 85–86, 106 S.Ct. at 1717. The defendant is not the only one with vital interests at stake, however. The Court noted in *Batson* that such violations also harm improperly excluded jurors and touch the entire community by "undermin[ing] public confidence in the fairness of our system of justice." *Id.* at 87, 106 S.Ct. at 1718. Mindful of the responsibility we carry, and mindful of the fact that the American justice system itself is on trial when a *Batson* challenge is raised, I am constrained to dissent in part in the present case.

I agree with the majority that the district judge acted within his discretion in declining to afford Tindle an evidentiary hearing. While I think it is important to stress that proposed *in camera, ex parte* submissions to support the government's rebuttal should be carefully scrutinized by the courts and permitted only in limited circumstances, I also agree with the majority that most of the *in camera* material in the present case was treated appropriately by the district court.

I disagree with the majority on two points, however. First, I believe that the jury list as augmented with the prosecutor's notes during voir dire should have been made available to Tindle, with court-approved redactions where appropriate. Second, and more important, I believe the district court's finding that the government carried its burden of providing a non-pretextual, neutral explanation was clearly erroneous as to two of the five black jurors who were struck with peremptory challenges. I would therefore reverse and remand for a new trial.

I.

In *United States v. Garrison*, 849 F.2d 103 (4th Cir.1988), we noted that "the important rights guaranteed by *Batson* deserve the full protection of the adversarial process except where compelling reasons requiring secrecy are shown." *Id.* at 106 (citing *United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir.1987)). We also stated clearly in *Garrison* that "the government must make a substantial showing of necessity to justify excluding the defendant from this important stage of the prosecution." *Id.* In my opinion, such a showing has not been made with respect to

the jury list containing the prosecutor's notes.

The district court concluded that *ex parte, in camera* submission was appropriate because the annotated jury list

> reveal[s] strategy employed by government counsel during the trial of the case. Were the Court to permit counsel for defendant to have access to the *in camera* submission and were a new trial to be then ordered, defendant would have access to materials to which he would not otherwise be entitled either under Rule 16, F.R.Crim.P., or under the Jencks Act.

*United States v. Tindle,* No. H–83–00154, slip op. at 18–19 (D.Md. June 2, 1987) (Harvey, C.J.). In its Brief to this Court, the government also argues that it should not be required to disclose its "work product" to the defendant. These statements have no bearing on the present inquiry. I have no doubt that a defendant's request for the prosecutor's annotated jury list as part of *discovery* would properly be denied on all three grounds raised by the government. However, here the government, facing the defendant's *prima facie* case of discriminatory jury selection under *Batson,* has *chosen* to use the annotated jury list as evidence to support the government's articulated neutral explanations for its juror challenges. Any "work product" claims are therefore inapposite, and the requirements of Rule 16 and the Jencks Act need not be met. As for the district court's concern about revealing prosecutorial strategy, that can hardly be of concern where, as here, *Batson* is being applied retroactively after the completion of the trial at issue.

If any specific notations on the list warrant confidentiality, such as for example a notation that might embarrass a potential juror or pertain to an ongoing unrelated investigation, the district court could easily accommodate all competing concerns through careful redaction. Limited, court-supervised redaction would protect legitimate concerns of the prosecutors while also preserving the vital adversarial aspect of the *Batson*-type challenge.

Where *ex parte, in camera* submission is indeed necessary for some reason, obvious-ly the excluded party must rely on the judge to give full and fair consideration to the evidence and to relevant legal and factual issues. But in our adversarial system, we ordinarily go to great lengths to ensure that both sides have an equal opportunity to argue all points and all evidence before a judge reaches his decision, and to ensure that such proceedings are open to the public. I see no reason to stray from the usual principles in the present contest. Indeed, I would argue that openness and candor are even more important in a *Batson*-type controversy than in most other situations. Anyone denied access to purportedly exonerating materials cannot help suspecting the worst—the best intentions of government counsel and the district court notwithstanding—it is simply human nature to be suspicious when relevant data is withheld by a decisionmaker.

The district judge specifically mentioned the *in camera* submission of the annotated jury list and concluded that "[c]lose examination of these notes reveals that the reasons given by government counsel for these strikes were not pretextual. The notations made contemporaneously with the exercise of the strikes in question fully support the explanations given by government counsel for exercising these peremptory strikes." *United States v. Tindle,* No. H–83–00154, slip op. at 14 (D.Md. June 2, 1987). To the extent that the jury list supports the government's assertions, its release would be reassuring to any who suspected improper conduct by the prosecution and would foster public confidence in the system. *See Batson,* 476 U.S. at 87, 106 S.Ct. at 1718 ("Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice."). I therefore think the district court acted improperly in denying the defendant access to the annotated jury notes, and would order their release following appropriate redactions by the district court.

## II.

My chief disagreement with the majority opinion is with its endorsement of the dis-

trict court's finding that the prosecution rebutted Tindle's *prima facie* case with neutral and non-pretextual explanations for each peremptory challenge at issue. In *Batson*, the Supreme Court ruled that once a *prima facie* case is established, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." 476 U.S. at 97, 106 S.Ct. at 1723. A court's failure to undertake a serious examination of prosecutors' explanations makes the government's burden illusory. Because I believe the district court's finding was clearly erroneous as to two of the challenges, I would reverse and grant a new trial.

The government explained that black potential juror Granderson was struck because of the resemblance between her name and "Grandison," the surname of the defendant in an unrelated case also prosecuted by Assistant United States Attorney Cobb.[1] The explanation is so flimsy that it cannot be held to survive a serious pretext inquiry. Grandison was in no way involved in the present case, and neither was his connection with Cobb. Ms. Granderson would not herself have been at issue in the case; jurors are not addressed by name during trials, so there could be no grounds for concern that others might hear her name and be confused. The difference in spelling indicates lack of any relationship, not the reverse. If the pretext inquiry is to be at all meaningful, the government's explanation of the Granderson strike simply cannot be accepted.

The government's lame explanation for its peremptory challenge of prospective juror Johnson is not much better. The district court summarized the government's explanation as follows:

> Juror Johnson was listed as being 30 years of age and a construction laborer

who resided in Beltsville, Maryland. According to the government, when this juror was struck, the prosecutors were unaware whether he was black or white. The master jury list for the September Term 1983 indicated that juror Johnson was unemployed while the jury list used at trial indicated that he was employed as a construction laborer. Although government counsel have no clear recollection of this particular juror, they believe he was struck because it was thought that he was not regularly employed. It was further believed that at times when he was employed, he worked at a location in Prince George's County which was near an area where the Tindle narcotics operation was conducted.

*United States v. Tindle*, No. H–83–00154, slip op. at 9–10 (D.Md. June 2, 1987). While it may be true, the government's assertions that the prosecutors were unaware of whether Johnson was black or white, and that race did not enter into the decision to challenge, cannot simply be blindly accepted by this Court as true. *See Batson*, 476 U.S. at 98, 106 S.Ct. at 1723 ("Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.'") (quoting *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972)).

The prosecutors' assertion that they did not remember what Johnson looked like is seriously undermined by their simultaneous assertion that another black potential juror was properly struck because he was of the same size and appearance as a co-defendant who was planning to raise an issue of identification accuracy at trial. Once a *prima facie* case under *Batson* has been made out, it does not require a partic-

---

1. A concern about potential juror Granderson being kin to Anthony Grandison, a man whose peculiar view of civic obligation is well known to this Court, *see United States v. Grandison*, 780 F.2d 425 (4th Cir.1985), would be wholly legitimate. It might form a reason to strike Mrs. Granderson, however, that reason was not advanced. Even if it was advanced, I am not persuaded that it would be sufficient justification in itself. The manner to allay that concern is by *voir dire*, then if kinship is found a strike could be made. It does not appear that a question regarding kinship was made of Granderson during *voir dire*. Since Grandison was black, 780 F.2d at 430–31; Brief for Appellants at 32, *United States v. Grandison*, 780 F.2d 425 (4th Cir.1985), and Granderson was black also, blackness stands as the reason for the strike.

ularly suspicious mind to conclude that a prosecutor's selective memory about the racial characteristics of potential jurors cannot be countenanced.

The government's explanation as to Johnson's place of employment is also not supported by any contemporaneous evidence. The government does not point to any evidence that would justify the prosecutors' claimed belief at the time of voir dire that Johnson worked at a location near Tindle's narcotics operations. The government thus is again asking this Court blindly to accept its affirmation of good faith, something *Batson* forbids us to do.

The government admittedly faces a difficult task when asked to reconstruct, several years later, most of its reasons for challenging prospective jurors. This is particularly true in the case of peremptory challenges, which ordinarily do not require any explanation or justification. I also acknowledge that *Batson* was decided nearly three years after the trial in the present case. Yet, to most of us, racial characteristics, white or black, are readily apparent and usually remembered. As the government acknowledges in its Brief to this court, the prosecutors in the present case were already required at the time of trial, as a matter of office policy, to be prepared to articulate "satisfactory grounds" for the exercise of a peremptory strike "particularly where a respective juror is a member of a group against which, for equal protection purposes, discrimination will be deemed to be 'suspect'." Appellee's Brief at 5, *quoting* 1983 Office Policy Manual, United States Attorney's Office for the District of Maryland.

While I have a strong inclination to believe in the good faith asserted by the prosecutors, my reading of *Batson* compels me to reach the conclusion that the government has failed to carry its burden of rebutting Tindle's *prima facie* case with neutral and non-pretextual explanations for the peremptory challenges of potential jurors Granderson and Johnson. If the explanations offered for those strikes are deemed adequate, the burden explicitly as-

signed to the government by the Supreme Court in *Batson* becomes totally illusory.

I therefore dissent in part.