621 So.2d 1167 (1993)
STATE of Louisiana, Appellee,
v.
Dennis E. JOHNSON, Appellant.
No. 25015-KA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 1993.
*1169 Richard E. Hiller, John M. Lawrence, Indigent Defender Bd., for appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Catherine M. Estopinal, Asst. Dist. Atty., for appellee.
Before SEXTON, LINDSAY and BROWN, JJ.
BROWN, Judge.
In State v. Johnson, 497 So.2d 346 (La. App.2d Cir.1986), we affirmed defendant's 1986 conviction for attempted simple burglary and sentence as a second felony offender to ten years at hard labor. This appeal is limited to a review of defendant's claim that blacks were purposely excluded from serving on his jury.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court pronounced that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." Thereafter, in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the court declared that the rule established in Batson was to be retroactively applied to all cases then pending on direct review and not yet final. The instant case is such a "pipeline" case.
*1170 During the jury selection process, defendant, who is black, objected to the peremptory strike by the prosecutor of a black prospective juror. Citing Griffith v. Kentucky, supra, the Louisiana Supreme Court granted Johnson's writ application in part and remanded to this court to consider defendant's Batson claim. State v. Johnson, 503 So.2d 469 (La.1987). After determining that a prima facie case of discrimination had been established, this court in turn remanded to the trial court to allow the state an opportunity to explain its reason for challenging the prospective black juror. State v. Johnson, 511 So.2d 873 (La.App. 2d Cir.1987).
An evidentiary hearing was set and held on October 26, 1987. At that hearing, the state introduced an affidavit from the trial prosecutor setting forth his reasons for the challenge of this particular juror. (Excerpts attached as "Appendix A"). Defense counsel requested a continuance, which was granted, until November 16, 1987. On November 16, 1987, the defense filed a memorandum "to point out numerous instances in the record of the voir dire and the juror questionaire forms which demonstrate that the prosecutor's reasons [for the peremptory challenge] are unfounded." The defense filed a supplemental memorandum on November 20, 1987, to specifically "point out areas in the voir dire transcript and areas in the juror questionaire forms which demonstrate that the prosecutor's affidavit is insufficient and unfounded." Copies of juror questionaire forms were attached to this supplemental memorandum.
The record indicates that a six person jury was selected with the state exercising three peremptory challenges to strike one black and two white prospective jurors. The defense used all six of its peremptory challenges. Two additional prospective black jurors were in the general venire but were not called before the jury was impaneled.
On September 14, 1988, after reviewing the state's affidavit, the voir dire transcript and the defendant's memoranda, the trial judge denied a further hearing and found the state's reasons for the peremptory challenge were unrelated to race. The ruling was given in open court with neither defendant nor his attorney in attendance.
Because defendant had not been given notice of the adverse ruling, this out-of-time appeal was allowed. Defendant argues his first three assignments of error which are directed towards the procedure used by the trial court to conclude that the State's challenge was not motivated by race.[1] In particular, defendant complains that the ruling was handed down with neither defense counsel nor defendant present and that an additional evidentiary hearing should have been conducted to allow cross-examination of the prosecutor and presentation of other unspecified relevant evidence.

DISCUSSION
The exercise of peremptory challenges by the government to exclude blacks from jury service by reason of their ethnicity violates the Equal Protection Clause of the Constitution. Batson, supra. A defendant who complains must demonstrate from all of the relevant circumstances an inference that the government intended to discriminate. A defendant may establish such a prima facia case under Batson by showing that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Batson, 476 U.S. at 80, 106 S.Ct. at 1714, 90 L.Ed.2d at 76-77; State v. Collier, 553 So.2d 815, 818 (La.1989).[2]
*1171 The trial court must determine if a prima facie case of discrimination has been shown; if so, the burden shifts to the state to come forward with a non-racial explanation for striking the juror. The explanation need not rise to the level of a challenge for cause; however, the fact that it corresponds to a valid for-cause challenge will demonstrate its race-neutral character. Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The explanation must be clear, racially-neutral, reasonably specific and related to the case at bar. Collier, 553 So.2d at 820.
The trial court is in the best position to determine whether an attorney's explanation for exercising a peremptory challenge is non-racial. In its evaluation, the court must determine "whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." State v. Williams, 610 So.2d 991, 1002 (La.App. 1st Cir.1992). The reasons offered to explain the exercise of the peremptory challenges should be deemed race-neutral unless a discriminatory intent is inherent in those reasons. Once appropriate reasons are set out for the challenge, then the trial court must decide if the defendant has established purposeful discrimination. In most cases this consists of a ruling on the credibility of the attorney exercising the challenge. Hernandez, supra.
In the instant case, the prosecutor explained that he challenged the prospective juror because she appeared unresponsive and disinterested in jury service. Clearly these were non-racial reasons. See, e.g., State v. Willis, 552 So.2d 39, 42 (La.App. 3d Cir.1989), writ denied, 560 So.2d 20 (La.1990) (meekness, inattentiveness); State v. Manuel, 517 So.2d 374, 376 (La.App. 5th Cir.1987) (unresponsiveness).
In a memorandum defendant disputed the prosecutor's stated intent based on the voir dire of all of the potential jurors and their answers to questionaires. Defendant's argument did not convince the trial court that the prosecutor's explanation was pretextual and untruthful. We must judge the trial court's assessment of the prosecutor's believability and determine whether that court should have allowed an expanded evidentiary hearing.
A trial court's decision on the issue of a prosecutor's intent is to be afforded great deference on appeal. Batson treats intent to discriminate as an issue of fact which largely turns on an evaluation of the credibility of the prosecutor. Certainly a trial judge who observed the questioning of the prospective jurors is in the best position to discern the truthfulness of the prosecutor's explanation. Thus, we decline to overturn a trial court's finding on the issue of discriminatory intent unless convinced that its decision was clearly wrong or manifestly erroneous. Hernandez, supra.
Given these facts and circumstances, we hold that the trial court did not err in finding the prosecutor's reasons for peremptorily excluding the prospective black juror were non-racial and honestly believed. We now turn to whether the trial court acted within its discretion in not allowing an expanded evidentiary hearing.
The court conducted a hearing on October 26, 1987, at which time the prosecutor submitted an affidavit in explanation of his use of the peremptory challenge. Rather than proceed at that time, defendant sought and obtained a delay until November 16, 1987. The defense filed a memorandum which referred the court to the *1172 voir dire transcript and answers to the jurors' questionaires. In a supplemental memorandum the defense specifically argued the points of the prosecutor's affidavit.
Defendant now argues that a further evidentiary hearing was required based on State v. Ford, 533 So.2d 368 (La.1988). In that case, the Louisiana Supreme Court ordered the district court to conduct an evidentiary hearing to include cross-examination of the prosecuting attorney and introduction of all relevant evidence; however, there are no particular facts to show why that hearing was ordered.
We do not think that Ford, supra, intended to require a full evidentiary hearing in all cases involving alleged Batson violations. To do so would allow unreasonable interruptions of trials. In United States v. Garrison, 849 F.2d 103 (4th Cir. 1988), the court stated:
Garrison's insistence on an evidentiary hearing in which prosecutors and defense attorneys and possibly other witnesses would be examined and cross-examined misconceives the Batson inquiry. Although a district court could conduct such a hearing if it believed circumstances warranted it, Batson does not require this intrusion on the trial proceedings.
Garrison, 849 F.2d at 106. See also United States v. Clemons, 941 F.2d 321 (5th Cir.1991), finding a sidebar conference sufficient.
Although, post-trial proceedings permit the court latitude less restricted by the press of time, it nevertheless remains within the sound judgment of the trial court to limit the extent of the Batson hearing. In United States v. Tindle, 860 F.2d 125 (4th Cir.1988), the defendant's conviction was affirmed, but the case was remanded for a decision concerning the defendant's claim that blacks had been systematically excluded from his jury. On appeal after remand, the trial court's procedure and findings were affirmed; specifically, it was determined that the prosecution had given neutral and non-pretextual reasons for challenging prospective black jurors, that no evidentiary hearing was necessary and that the district court did not err in permitting an in camera submission of some materials by the prosecution (personal notes on the jury list) and in refusing the defense access to those materials.
In Tindle, the defendant wanted to testify and call as witnesses the prosecutors, one of his defense counsel, a co-defendant and several others who were alleged to have been present during voir dire. The trial court decided that such an extended hearing was not necessary and that the matter could be decided upon the record. On appeal, the court declared that there is no absolute right to an evidentiary hearing and that the determination of whether such a hearing is needed is within the sound discretion of the district court.
In the instant case, the original trial judge was the same judge who conducted the Batson inquiry and thus had personally observed the jury selection process. The judge had also reread the transcript of the entire voir dire proceedings.
Adopting the reasoning of Tindle, we hold that when dealing with a post-trial inquiry it is within the sound discretion of the trial court to determine if an evidentiary hearing is necessary. In the instant case a Batson hearing was conducted on October 26, 1987. After the state filed an affidavit setting forth its motivation for challenging the prospective black juror, the defense sought a continuance to respond. The defendant's response was a memorandum arguing the insufficiency of the prosecutor's reasons for excusing the juror. The defense also suggested that the transcript of the selection process would support its argument. Neither the memoranda nor defendant's brief on appeal suggests any other specific relevant evidence which would be presented at an evidentiary hearing.
The trial judge was present during the examination of the prospective jurors and also read the transcript of the selection process. Under these circumstances there *1173 was no abuse of discretion in denying a further evidentiary hearing.
Defendant argues that he and/or his defense attorney were entitled to be in attendance at the rendition of the court's opinion and that their absence was a violation of defendant's right to due process.
Because there are no cases in Louisiana addressing this issue, we look to federal jurisprudence for guidance. In United States v. Davis, 809 F.2d 1194, 1202 (6th Cir.1987), cert. denied, 483 U.S. 1007, 107 S.Ct. 3234-35, 97 L.Ed.2d 740 (1987), during jury selection in a pre-Batson trial, black defendants objected when the prosecution exercised peremptory challenges to exclude seven of nine black venirepersons from the petit jury. After finding facts sufficient to establish what it determined was a prima facie case of racially motivated exclusion, the district court required the prosecution to state its reasons for the peremptories in camera and out of the presence of the defendants. Davis, 809 F.2d at 1200. The district court then found that the prosecution did not purposefully exclude the venirepersons on the basis of their race. Davis, supra at 1206.
On appeal, the U.S. Sixth Circuit Court of Appeal held that the in camera ex parte procedure was constitutional because "the record of the proceedings ... [simply did] not indicate a situation where the presence of the defendants and their counsel was required to ensure fundamental fairness." Davis, supra at 1201. The court noted that the trial court had predicted with remarkable accuracy the burdens of proof and persuasion later pronounced by the Supreme Court in Batson and found that the trial court's procedure was consistent with that decision because:

Batson does not require rebuttal of the Government's explanation by defense counsel. Nor does Batson require the participation of defense counsel while the Government's explanations are being proffered. This is not to say that rebuttal and participation by a defendant in the "neutral explanation" phase of a Batson challenge are always inappropriate. To the contrary, the Supreme Court left it up to the trial court to determine what role defendants were to play once the government proffered its reasons for black juror exclusion.
Davis, supra at 1202. In short, "the district court was entitled to hear from the government under whatever circumstances... [it] ... felt appropriate." Id.
Unlike Davis, supra, defendant was present at the hearing of October 26 and given a copy of the prosecutor's explanation of the challenge. The hearing was continued to November 16 and on that date defendant chose to respond through a memorandum. The opinion was rendered in open court. No in camera ex parte procedure was employed.
LSA-C.Cr.P. Art. 831(A)(3) requires defendant's presence at the discharge of a juror during the trial. Defendant and his counsel were present when the juror was excused. In post-trial Batson proceedings, however, we find that neither defendant nor defense counsel has to be present in court for the rendition of the opinion that re-examines the intent of the prosecutor. We further find that the opinion could have been in writing and delivered as are opinions in Post Conviction Relief proceedings. Defendant's presence when the court delivers its opinion on a post-trial Batson claim is not a matter of fundamental fairness; however, notification of all parties is required. Because defendant was not notified, an out-of-time appeal was granted and prejudice was thus avoided.

CONCLUSION
The trial court's opinion on the credibility of the prosecutor's explanation for challenging a juror is accorded great deference. On this record we cannot find that the trial court was clearly wrong in accepting the prosecutor's non-racial reasons for exercising his challenge. Furthermore, the trial court did not err in the procedures and methods it employed in conducting the Batson hearing.

*1174 DECREE
AFFIRMED.

APPENDIX A
Excerpts from the affidavit read as follows:
While responding to questions about her employment with Sears, Roebuck and Company, [the prospective juror] appeared to have a general disinterest with her work. It further appeared that the slight degree of interest which ... [she]... showed in jury service was based upon the fact that she would enjoy it more than work or that it would, at least, serve as a change from work. In either event, ... the impression received was that the prospective juror was not genuinely interested in serving as a juror.
Additionally, ... [juror's] ... apparent disinterest in her job caused concern in view of the fact that the defendant was charged with a crime against property the simple burglary of a business.
[Prospective juror] graduated from high school and subsequently attended Caddo Career Center, however, when questioned about the latter by defense counsel she was either unwilling or unable to provide much information about her interest and goals while enrolled there. Nonresponsiveness to that line of inquiry and the possible reasons for the nonresponsiveness caused concern.
[Prospective juror] stated that she was active in church activities, and based solely upon her demeanor when answering questions about her interest in these activities, the impression was that she did not want to be placed in the difficult position of judging her fellow man.
[Prospective juror] never developed appropriate eye contact or rapport with [prosecutor] and as a general personal preference eye contact and some rapport, however, slight, is important in terms of evaluating those prospective jurors who may have a predisposition against prosecution. Based on this fact, [prosecutor] concluded that [prospective juror] might have such a predisposition.
... [T]he challenge of prospective juror was based on articulable racially neutral criteria and, from [the prosecutor's] perspective, racial discrimination was completely absent from the jury selection process in the case.
NOTES
[1] Assignment No. 4 appears to be moot given that appeal has been granted. Assignment No. 5 was not briefed; therefore, it is deemed abandoned. URCA Rule 2-12.4; State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992); State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992). After reviewing the record as requested by assignment no. 6, we find no errors patent.
[2] The Batson framework has been expanded recently. First, in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court held that the prosecutor in the trial of a white criminal defendant is prohibited from excluding black jurors on the basis of race. Thus, a criminal defendant may object to race-based exclusions irrespective of whether he and the excluded juror share the same race. Recognizing that the Equal Protection Clause protects the juror, in Edmonson v. Leesville Concrete Co., 499 U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Court held that neither party in a civil action may use its peremptory strikes in a racially discriminatory manner. Finally, in Georgia v. McCollum, ___ U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), a criminal defendant is prohibited from engaging in purposeful discrimination on the basis of race in his exercise of peremptory challenges.