KEENAN, Circuit Judge,
concurring in part and concurring in the judgment:
I concur in the majority opinion, except for section III.A.1. See Op. at 208-12. In *218 that section, the majority concludes that the district court did not err in refusing to allow Barnette to review the prosecutors’ race and gender notations (the race notations), which the court considered in rejecting Barnette’s Batson claim. In my view, in reaching its conclusion, the majority fails to apply our holdings in United States v. Garrison, 849 F.2d 103 (4th Cir.1988), and United States v. Tindle, 860 F.2d 125 (4th Cir.1988). However, I agree with the majority’s ultimate holding that the district court’s judgment should be affirmed, because the record shows that the district court’s error in refusing to allow Barnette access to the race notations was harmless beyond a reasonable doubt.
I.
After the Supreme Court issued its decision in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (Miller-El II), and vacated our prior decision affirming Barnette’s convictions, see 546 U.S. 803, 126 S.Ct. 92, 163 L.Ed.2d 32 (2005), vacating United States v. Barnette, 390 F.3d 775 (4th Cir.2004), the government filed a supplemental joint appendix in this Court that included the completed questionnaire of an African-American juror, Betty Campbell, who had been excused for cause. On the cover sheet of Ms. Campbell’s questionnaire was a notation that included the juror’s name, the fact that she had been excused for cause, and the letters “B/F,” signifying that this potential juror was a black female. Seeing this “B/F” notation for the first time, Barnette argued that this notation was evidence that the government purposefully discriminated against black jurors during jury selection.
We remanded the case to the district court for “further consideration of the Bat-son claim in the first instance in light of [Miller-El II].” On remand, the district court ordered the government to submit for in camera review copies of all juror questionnaires in the government’s possession. See United States v. Barnette, No. 3:97CR-23, 2010 WL 2085312, at *5 (W.D.N.C. May 20, 2010). Upon receiving the government’s submission, the district court observed that the race and gender notation on the first page of Ms. Campbell’s juror questionnaire was not an aberration. Rather, the district court found that of the 204 questionnaires submitted by the government for in camera review, 117 had a race notation on the cover sheet, 64 of which related to eligible jurors. Id. at *20. Although the district court rejected Barnette’s request to obtain these unredacted copies of the juror questionnaires containing the 117 race notations, the district court “set a hearing for the Government to explain the presence of race and gender notations on the cover sheets of questionnaires from the in camera submission.” Id. at *6.
The district court conducted a hearing on this issue, at which the district court and the government, but not Barnette, had copies of the 117 juror questionnaires containing the race notations. Barnette’s counsel expressed an objection to the non-adversarial, one-sided nature of this hearing, in which the district court and the government engaged in a colloquy concerning information to which Barnette was not privy. Barnette thus was unable to question any of the explanations provided by the government relating to the presence of the race notations.
Following the hearing, the district court issued an order and memorandum opinion in which the court rejected Barnette’s Bat-son claim. The district court’s opinion revealed to Barnette for the first time that, in addition to the race notations handwritten on 117 of the juror question *219 naires, the prosecutors had made race and gender notations on “sticky notes” attached to 48 of the 117 questionnaires that already had a race notation. Id. at *20. In its opinion, the district court accepted as “plausible” the government’s explanation that the race notations were made to help the government respond to “Batson objections.” Id. at *28. The district court concluded, after reviewing the copies of the juror questionnaires containing the race notations to which Barnette was denied access, that there was no evidence that the prosecutors purposefully excluded any prospective juror based on that person’s race. Id.
II.
Citing several reasons, the majority approves of the district court’s in camera examination of the race notations, and the effectively ex parte hearing described above. First, the majority states that, “as in Tindle and Garrison, we are presented with unique circumstances specific to the unusual procedural posture of the case, and that such circumstances are highly unlikely to be repeated.” Op. at 210. Although I agree that there are unique circumstances presented here that are not likely to be repeated, and that the procedural posture of this case is unusual, these facts do not support the majority’s failure to apply the central holdings of Tindle and Garrison.
In Garrison, a case also involving a Bat-son challenge, this Court emphasized that “the important rights guaranteed by Bat-son deserve the full protection of the adversarial process except where compelling reasons requiring secrecy are shown.” 849 F.2d at 106 (emphasis added). We stated further that “the government must make a substantial showing of necessity to justify excluding the defendant from” the district court’s ex parte examination of the prosecutor’s notes. Id. at 106 (emphasis added). We cautioned that “if the [district] court decides to consider any notes, other documents, or statements pertaining to the prosecutor’s explanation [for striking a minority potential juror], we ... counsel that a trial court should ordinarily conduct adversary, rather than ex parte, proceedings.” Id. at 107. Nevertheless, we concluded that any error committed by the district court in that case was harmless, because “[t]he notes neither contradicted or added anything of substance to the government’s explanations offered and debated at length in open court.” Id.
Our decision in Tindle again addressed whether a defendant was entitled to the prosecutors’ notes concerning the reasons for the exercise of peremptory challenges, which the district court had reviewed in camera. In concluding that the district court did not err in refusing the defendant access to those notes, we observed that the district court found that the in camera material “included extremely sensitive matters as well as work product materials of the government attorneys. Portions of the sensitive materials submitted relate to threats and attempted intimidation fostered by defendant Tindle himself.” 860 F.2d at 131. We quoted our Garrison decision extensively, applied the required “compelling reasons” standard, and concluded that “Compelling reasons” for the use of [the in camera ] procedure were “clearly present” in that case. Id. at 132.
In my view, the majority fails to apply the required “substantial showing of necessity” or “compelling reasons” standard, as mandated by our decisions in Tindle and Garrison. Instead, the majority sidesteps these requirements, merely concluding that “unique circumstances” are present here. In short, the majority fails to identify any particular “compelling reason” or basis supporting a “substantial showing of *220 necessity” that would justify the district court’s in camera consideration of the prosecutors’ notes.
Most notably, the government conceded during oral argument before this Court that such “compelling reasons” do not exist in this case. In accordance with this concession, I would apply the “substantial showing” of “compelling reasons” standard, as required by Tindle and Garrison, and would conclude that the government has failed to establish “compelling reasons” to deny Barnette access to the materials analyzed by the district court. My second concern with the majority’s analysis is its reliance on the work-product status of the race notations at- issue. The fact that these notations were the prosecutors’ work product does not play a role in our analysis under Tindle and Garrison. Rather, the work-product nature of this material is the very reason why Garrison and Tindle are applicable in the first place, because each of those cases also involved attorney work product in the form of the prosecutors’ notes.
Third, in my view, the majority incorrectly relies on the fact that, at the sentencing hearing in 2002, Barnette did not request permission to review the prosecutors’ annotated questionnaires or notes. The majority emphasizes this fact in concluding that the district court did not err in denying Barnette access to this material on remand after the Supreme Court’s decision in Miller-El II. See Op. at 210. In 2002, however, Barnette was unaware that the race notations existed, and he did not become aware that there were such notations until the government’s submission to this Court in 2005 following the Miller-El II decision. Because neither Tindle nor Garrison authorizes a “fishing expedition,” Barnette should not be faulted for failing in 2002 to seek access to the race notations of which he was not aware.
Fourth and finally, while I appreciate the majority’s attempt to place Garrison and Tindle in historical perspective, see Op. at 209-10, I fail to see how that perspective permits us to depart from the holdings of those cases. There is nothing in the opinions in Garrison and Tindle that suggests a time limit regarding how many years after the Batson decision this Court should continue to apply the “compelling reasons” standard that governs cases of this type. Cf. Grutter v. Bollinger, 539 U.S. 306, 343, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) (“We expect that 25 years from now, the use of racial preferences will no longer be necessary to further the interest approved today.”). Perhaps, as the majority suggests, the “relatively limited evolution of doctrine heralded by [Miller-El 77],” Op. at 211, is reason to revisit the “compelling reasons” standard, but that task would be one for the en banc consideration of this Court, not for this panel.
In sum, I would hold that our opinions in Garrison and Tindle plainly require that when a district court analyzing a claim under Batson decides to consider prosecutors’ notes regarding the reasons for the exercise of preemptory strikes, the district court should ordinarily conduct adversarial, rather than ex parte, proceedings. See Garrison, 849 F.2d at 107. Therefore, I would conclude that although Barnette was not entitled to the race notations in the first instance, he was entitled to view them at the Batson hearing on remand once the district court decided to consider the notations but failed to find a “substantial showing” of “compelling reasons” to exclude Barnette from access to them. Accordingly, I would hold that the district court erred in denying Barnette the opportunity to review the race notations made by the prosecutors.
*221 III.
Although I would conclude that the district court erred in denying Barnette the opportunity to review the race notations, I would nevertheless hold that the district court’s error was harmless beyond a reasonable doubt. I have reviewed the copies of the juror questionnaires that contain these notations, and would conclude, just as this Court concluded in Garrison, that “[t]he notes neither contradicted nor added anything of substance to the government’s explanations offered and debated at length in open court.” 849 F.2d at 107. Both the district court and the panel majority conducted a detailed and thorough comparative juror analysis, in the latter of which I am pleased to concur.
In this case, it is clear beyond a reasonable doubt that even with the benefit of access to the prosecutors’ notes, Barnette would not have been able to establish that the prosecutors purposefully excluded any prospective juror based on that person’s race. I therefore concur in the judgment reached by the majority.