598 So.2d 537 (1992)
David FINLEY and Mary E. Finley, Wife of David Finley
v.
STATE FARM INSURANCE COMPANY, William Richard Bayhi and Elfreeda D. Bayhi.
No. CA 91 0369.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
*538 James Farrier, Baton Rouge, for plaintiff-appellant David Finley, et ux.
Andrew A. Lemeshewsky, Jr., New Orleans, for intervenor-appellant 2nd Hartford Acc. & Indem. Company.
William E. Willard, Baton Rouge, for defendant-appellee State Farm Fire & Cas. Co., et al.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action is a suit for damages in tort against the owners of a piece of residential property and their liability insurer. The plaintiffs (a husband and wife) alleged that the husband was crossing the yard of the property when he stepped in a hole, fell and injured himself. The workers' compensation insurer of the husband's employer intervened for recovery of all medical and benefit payments it made to him. The trial court ruled that the husband stepped in an imperfection, depression or hole in the yard on the premises, and the imperfection, depression or hole did not constitute an unreasonable risk of harm. Accordingly, judgment was rendered in favor of the defendants dismissing the plaintiffs' suit with prejudice.[1] The plaintiffs and the intervenor took this devolutive appeal.

FACTS
William Richard Bayhi and Elfreeda D. Bayhi (the Bayhis) are the owners of the residential premises located at 712 Aster Street in the City of Baton Rouge, East Baton Rouge Parish, Louisiana. The Bayhis leased this property to tenants. State Farm Fire & Casualty Company (State Farm) was the liability insurer of the property.
In July of 1986, the Bayhis contracted with the All Star Flooring Company (All Star) of Baton Rouge to install new carpet in the house on the Aster Street premises. On July 30, 1986, the plaintiff, David Finley, and his helper, Crafton Earl Lingfelt, were employees of All Star and were sent to install the carpet. The utilities were not connected to the premises on July 30 and 31. Because electricity was required to seam the new carpet, Finley and Lingfelt could not complete the job until August 1, 1986, when the utilities were connected.
*539 On the morning of August 1, 1986, Finley and Lingfelt drove to the Aster Street premises in Finley's van. Finley parked in the driveway. The men went into the house to complete their work. The seaming was completed at about mid-morning and the men left the house. Finley left first. Finley went out of the front door, stepped onto the sidewalk leading from the house and turned to cross the lawn. When Finley stepped onto the lawn, he did so in the area of an imperfection, depression or hole. This imperfection, depression or hole was described by the trial court judge as "about a foot in diameter by about anywhere from two to max three inches deep." Finley claims the hole caused him to fall and injure himself.

ADMISSIBILITY OF DEMONSTRATIVE EVIDENCE

(Assignment of error 1)
The plaintiffs assert that the "Trial Court erred in excluding from evidence an exhibit prepared by plaintiff's expert purporting to demonstrate the dimensions of the alleged defect ..."
The plaintiffs presented the testimony of J.D. Roberts, who was qualified by the trial court as an expert witness on the subject of safety. During Roberts' testimony the following occurred:
Q. OKAY. NOW, MR. ROBERTS, DID YOU PREPARE FROM MR. VANDERBROOK'S MEASUREMENTS, DID YOU PREPARE ON A FLAT SURFACE WHAT
A. YES, SIR.
THE COURT: FLAT SURFACE WHAT, PLEASE?
BY MR. FARRIER:
Q. A FACSIMILE OF THE MEASUREMENTS OF A HOLE?
A. YES, SIR, I PREPARED A MODEL WHICH RESEMBLED THE MEASUREMENTS THAT THE VANDERBROOK REPORT GAVE AND WHICH DEPICTED A HOLE THAT WAS APPROXIMATELY ONE FOOT IN DIAMETER AND TWO-AND-¾'S DEEP.
MR. WILLARD: OBJECT TO THAT TOO, YOUR HONOR.
THE COURT: YES, I'M NOT GOING TO LET THAT IN, YOU CAN SHOW IT TO THE COURT.
A. I WAS TRYING TO SHOW THE SIZE OF THE HOLE TO INDICATE THE REPORT ABOUT IT BEING A VARIATION IN NATURAL TERRAIN.
THE COURT: WELL, NONE OF THOSE PICTURES LOOK LIKE THAT THOUGH THAT I'VE SEEN.
A. WELL, I'VE NEVER SAW [sic] THIS HOLE, BECAUSE I WAS `WAY PAST THE TIME.
THE COURT: NO, BUT THE PICTURES THAT DEPICT SUPPOSEDLY A HOLE THERE.
MR. FARRIER: LET ME ASK THIS QUESTION, JUDGE.
MR. WILLARD: YOUR HONOR, I OBJECT TO HIM TESTIFYING FROM IT, IT DOESN'T DEPICT THE TERRAIN THAT'S AROUND THERE IN ANY WAY, SHAPE OF [sic] FORM.
THE COURT: IT'S A FACSIMILE OF A HOLE TWO AND THREE-QUARTERS BY ONE FOOT, THAT'S WHAT HE'S SAYING.
A. YES, SIR, THAT'S WHAT IT IS.
MR. FARRIER: THAT'S WHAT I WANT HIM TO QUALIFY BECAUSE THIS DOESN'T HAVE GRASSES GROWING OUT AND THAT'S THE DIFFERENCE.
A. THAT'S CORRECT, YES, SIR.
MR. FARRIER: STATEMENTS HAVE BEEN MADE THAT THIS IS A NATURAL INDENTATION AND TO MITIGATE THE EFFECT OF IT I WANT HIM TO SHOW THE COURT WHAT A HOLE TWO AND THREE-QUARTERS INCHES LOOKS LIKE WHEN IT'S ON A FLAT SURFACE.
BY MR. FARRIER:
Q. GO AHEAD, MR. ROBERTS.
A. THAT'S BASICALLY WHAT IT DEPICTS.
MR. FARRIER: I WANT TO OFFER IT TOO, YOUR HONOR.

*540 THE COURT: YOU CAN PROFFER IT.
MR. FARRIER: YES, I'M GOING TO.
THE COURT: WE'VE [sic] HAVEN'T GOT NOTHING IN EVIDENCE THAT EVERYTHING ELSE IS FLAT AROUND THERE. THAT'S A FLAT SURFACE.
MR. FARRIER: I KNOW.
THE COURT: I DON'T THINK YOU HAVE ANY YARD LIKE THAT WITH A COMPLETELY FLAT SURFACE.
MR. WILLARD: YOUR HONOR, THAT'S BEING PROFFERED OVER AN OBJECTION?
THE COURT: IT'S BEING PROFFERED TO THE COURT OF APPEALS.
MR. WILLARD: JUST WANT TO BE CERTAIN IT'S BEING PROFFERED OVER MY OBJECTION.
THE COURT: YES.
The plaintiffs offered the exhibit as a model of a hole twelve inch in diameter and a two and three quarter inch in depth; the exhibit was not offered as a duplicate of the hole located on the Bayhis' premises.[2] A trial court has much discretion in determining the admissibility into evidence of a model. E. Cleary, McCormick's Handbook of the Law of Evidence, § 213, pp. 528-530 (2d ed 1972). The trial judge refused to admit the model into evidence because it did not look like the hole in the numerous pictures filed in evidence and because the yard was not a flat surface. Undoubtedly, the trial judge was influenced by the extensive photographic and testimonial evidence in the case pertaining to the hole. In this evidentiary posture, the admission of the model was merely cumulative and of little, if any, weight. After reviewing all of the pertinent evidence on this issue, we conclude that the trial judge did not abuse his discretion in refusing to admit the model into evidence.
This assignment of error is without merit.

REASONABLENESS OF THE RISK

(Assignment of error 2)
The plaintiffs assert that the "Trial Court erred in holding that the alleged defective condition, which was shown to be a hole at least 1' foot) [sic] in diameter and 2¾" inches deep, did not constitute an unreasonable risk of harm at its location."
The duty of the owner of immovable property is set forth in Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983) as follows:
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence..... This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315.... The difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La. C.C. 2317, a claimant is relieved of proving the defendant's scienter..... Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the `custody' of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. In both negligent and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing..... Under either theory of liability, the court *541 must decide if the risk which causes the injury is within the ambit of protection of the duty.
(Citations omitted)
There is conflicting lay and expert testimony in this case about the reasonableness of the risk caused by the imperfection, depression or hole where Mr. Finley fell. The trial judge resolved these conflicts in favor of the defendants. In Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989), the court discussed the proper method for the appellate review of conflicting testimony as follows:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable..... The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong..... In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.....
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said..... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination..... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
(Footnotes omitted; citations omitted)
See also, Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). In Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La. 1990), the court made the following observation concerning the appellate review of conflicting expert testimony:
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound.
After a thorough review of the record we conclude that the trial judge was not clearly wrong in accepting the testimony of the defendants' lay and expert witnesses. See, for example, Maples v. Merrimack Mutual Fire Insurance Company, 567 So.2d 1178 (La.App. 3d Cir.1990), writ denied, 572 So.2d 64 (La.1991) (ruts in an unimproved driveway); Carr v. City of Covington, 477 So.2d 1202 (La.App. 1st Cir. 1985), writ denied, 481 So.2d 631 (La.1986) (pothole twelve inches in diameter and one to two inches deep in an alley); Stone v. Trade-Mark Homes, Inc., 431 So.2d 61 (La. App. 1st Cir.1983) (cup-shaped hole seven inches in diameter and three inches deep on a vacant lot).
This assignment of error is without merit.[3]
*542 DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. The appellants are cast for the costs of this appeal.
AFFIRMED.
NOTES
[1] The only judgment of record provides that "there be judgment herein in favor of the defendants, State Farm Fire & Casualty Company, William Richard Bayhi and Elfreeda D. Bayhi, and against the plaintiffs, David Finley and Mary Finley, dismissing this suit, with prejudice, at the costs of the plaintiffs." This judgment does not adjudicate the intervention. However, the silence of a judgment with respect to an incidental demand at issue in the case constitutes a rejection of the demand. Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623 (La. App. 2d Cir.1990). Cf. Sun Finance Company, Inc. v. Jackson, 525 So.2d 532 (La. 1988).
[2] For Louisiana cases pertaining to the use of a duplicate as demonstrative evidence see Dawson v. Mazda Motors of America, Inc., 517 So.2d 283 (La.App. 1st Cir.1987); Ferguson v. Chrysler Corporation, 292 So.2d 791 (La.App. 1st Cir. 1974).
[3] Because we find no merit to this assignment of error, it is unnecessary for us to address assignments of error 3 and 4 asserting that the trial court erred "in holding that the Plaintiffs-Appellants fall was not cause [sic] by a defective condition" and "in failing to award damages to plaintiffs, as prayed for."