694 So.2d 1142 (1997)
Gregory LEE
v.
MAGNOLIA GARDEN APARTMENTS, et al.
No. 96 CA 1328.
Court of Appeal of Louisiana, First Circuit.
May 9, 1997.
*1145 Daniel McGlynn, Baton Rouge, for Plaintiff/Appellant Gregory Lee.
Richard T. Reed, Baton Rouge, for Defendant/Appellee Magnolia Garden Apartments, et al.
Grayson H. Brown, Baton Rouge, for Intervenor The Travelers Insurance Company.
Before WHIPPLE and FITZSIMMONS, JJ., and TYSON[1], J. Pro Tem.
WHIPPLE, Judge.
This tort action arises out of an alleged trip and fall in a hole or depression in the lawn at the Magnolia Garden apartment complex. The jury found that Magnolia Garden Apartments was not liable and a judgment was entered dismissing the claims of plaintiff, Gregory Lee.

FACTS AND PROCEDURAL HISTORY
Plaintiff was a resident of the Magnolia Garden apartment complex, where he had lived for two years prior to the accident. On the night of June 21, 1992, plaintiff exited his car, which he had parked in the apartment complex parking lot. Despite the fact that there were sidewalks leading from the parking lot to plaintiff's apartment, plaintiff chose to take a "short cut" across the apartment complex lawn. While walking across the lawn, plaintiff allegedly stepped into a hole or depression which caused him to fall, injure his knee and further injure his back.[2] Later that same night, plaintiff reported the accident to Shirley Thibodeaux ("Ms. Thibodeaux"), the resident manager of the apartments and inquired whether they would reimburse him for medical expenses incurred as a result of the alleged fall. Ms. Thibodeaux informed plaintiff that she lacked authority to grant his request, but she would present his inquiry to her manager the next day. Plaintiff then sought treatment at a local hospital emergency room.
Plaintiff claims he showed Ms. Thibodeaux the hole or depression the day after the accident. He estimates the hole or depression *1146 was seven or eight inches deep and a foot long. Plaintiff's wife, Karen Lee, who was his fiance at the time of the accident, claimed she and plaintiff went to the office the day after the accident to report it to Ms. Thibodeaux. She also claimed at trial that on a subsequent date, they went to see Kenneth Aucoin ("Mr.Aucoin"), the property manager and vice-president of R.A.S. Management Company, which managed Magnolia Garden Apartments. According to Ms. Lee, at Mr. Aucoin's request, they followed him to the apartment complex to show him the hole. Ms Lee estimated the depth of the hole as six inches and the length as twelve inches.
At the trial of this matter, Ms. Thibodeaux acknowledged that plaintiff reported the accident on the night it occurred; however, she contends he did not come back the next day to show her the hole. Instead, she reported the accident to her supervisor, Mr. Aucoin, but did not go to look for the hole on the day after plaintiff's telephone call because she did not know where to find it. Subsequently, and with difficulty, she found the hole, while inspecting the premises in the presence of the insurance adjuster. According to Ms. Thibodeaux, the hole was about two inches deep and five inches wide. The adjuster took photographs of the hole which were introduced into evidence at trial.
According to Mr. Aucoin, Ms. Thibodeaux reported the accident to him, but stated she had not heard back from the plaintiff after his request for payment of his medical expenses. About a week later, plaintiff came into the office and told Mr. Aucoin where the fall had taken place. Shortly thereafter, Mr. Aucoin examined the area of the fall and saw what he described as a "little indention" in the ground in that area. He described the "indention" as being one and a half to two inches deep and eight to ten inches long.
Matthew Eirick ("Mr.Eirick") was the maintenance helper at Magnolia Garden Apartments at the time of the accident. After learning of the accident, and based on a description of its location, Mr. Eirick found the hole and filled it. He did not believe the hole was deeper than two inches.
Plaintiff filed suit against Magnolia Garden Apartments, R.A.S. Management and Shelter Insurance Company (collectively referred to as "defendants") for injuries sustained in the accident. A jury trial was held, after which the jury returned a verdict in favor of defendants. On the jury verdict form, the jury indicated that there was no defect in defendants' premises and that defendants were not negligent. Accordingly, judgment was rendered in favor of defendants, dismissing plaintiff's claims. Additionally, plaintiff's motion for judgment notwithstanding the verdict and for new trial was denied.
From these judgments, plaintiff appeals, urging six assignments of error. Three of these assignments address the composition and selection of the jury. The other three assignments address the propriety of the jury's finding that there was no defect on the premises that posed an unreasonable risk of harm and the proper appellate standard of review of such a finding.

BATSON CHALLENGE
After voir dire was completed, but before the jury was sworn, plaintiff's counsel objected to the defense's alleged racially motivated use of peremptory challenges to strike all black persons from the jury, citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The record reflects that defendants' counsel had exercised six peremptory challenges to exclude all five of the black prospective jurors and one white female prospective juror. The trial court, without stating whether plaintiff had made a prima facie showing of intentional discrimination, nonetheless sought explanations from the defense for peremptorily challenging five prospective black jurors. After hearing the explanations, the trial court overruled the Batson challenge. On appeal, plaintiff asserts the trial court erred in this ruling.
A private litigant in a civil case may not use peremptory challenges to exclude jurors on the account of race. To do so is a violation of the Equal Protection Clause. Hurts v. Woodis, 95-2166, p. 6 (La.App. 1st Cir. 6/28/96); 676 So.2d 1166, 1172; Richard v. St. Paul Fire and Marine Insurance Company, 94-2112, p. 4 (La.App. 1st Cir. 6/23/95); 657 So.2d 1087, 1090 (citing Edmonson v. *1147 Leesville Concrete Company, Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)). To make a Batson challenge, the challenging party first must make a prima facie showing that the opposing party exercised a peremptory challenge on the basis of race. The burden then shifts to the opposing party to articulate a race-neutral explanation for striking the jurors in question which is related to the case to be tried. Batson, 476 U.S. at 96-98, 106 S.Ct. at 1723-1724; Hurts, 95-2166 at p. 6; 676 So.2d at 1172. A neutral explanation is one which is based on some factor other than the race of the juror excused. State v. Young, 613 So.2d 631, 633 (La.App. 1st Cir.1992), writ denied, 626 So.2d 1186 (La.1993). In this second step of the process, the explanation need not be persuasive, or even plausible, and unless a discriminatory intent is inherent in the stated reasons, the explanation given should be deemed race-neutral. Hurts, 95-2166 at p. 6; 676 So.2d at 1172; Young, 613 So.2d at 633.
If reasons are presented for the exercise of a peremptory challenge which are racially neutral on their face, an issue of fact is joined and the trial court must assess the weight and credibility of that explanation in order to determine whether the party raising the Batson challenge has carried his burden of proving purposeful Discrimination. Young, 613 So.2d at 633-634. In most cases, this consists of a ruling on the credibility of the attorney exercising the challenge. State v. Johnson, 621 So.2d 1167, 1171 (La.App. 2nd Cir.), writ denied, 626 So.2d 1178 (La. 1993). At this final stage, the trial court must consider the persuasiveness of the explanations. It is at this stage that implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. Hurts, 95-2166 at p. 6; 676 So.2d at 1172. However, the trial court's conclusion on the ultimate question of discriminatory intent is a finding of fact which is accorded great deference on appeal. State v. Collier, 553 So.2d 815, 818 (La.1989); Young, 613 So.2d at 634.
Initially, we note that the trial court did not expressly rule on whether the plaintiff had made out a prima facie case of purposeful discrimination. Instead, shortly after plaintiff voiced his Batson challenge, the trial court sought race-neutral explanations from the defense for the exercise of the peremptory challenges against the black prospective jurors. This action was tantamount to a finding that plaintiff had made a prima facie showing of intentional discrimination. State v. Green, 94-0887, p. 25 (La.5/22/95); 655 So.2d 272, 288. Accordingly, the burden was properly placed upon the defense to provide race-neutral explanations for its use of five peremptory challenges against five black prospective jurors. Defendants' counsel responded with the following explanations:
(1) Prospective juror Scott: Ms. Scott previously filed a claim as a result of an automobile accident.
(2) Prospective juror Dyer: Ms. Dyer previously served on a jury where she ruled in favor of the plaintiff.
(3) Prospective juror Reynolds: Mr. Reynolds was a thirty-five year old, divorced military retiree who had no children and did not own a home.
(4) Prospective juror Brand: Ms. Brand was in a car accident and suffered spinal cord injuries for which she filed an insurance claim. During voir dire, she indicated her belief that she was not treated fairly in the settlement of her claim.
(5) Prospective juror Sterling: During voir dire, Mr. Sterling acted independently from the other jurors and, unlike the other jurors, would not nod his head in response to questions by defendants' counsel.
After a thorough review of the record, we find that these reasons are facially race-neutral. None of these reasons are readily associated with the suspect class which is alleged to be the object of the defense's discriminatory use of peremptory strikes, i.e., prospective black jurors. See Green, 655 So.2d at 289. Consequently, we find that the defendants sustained their burden of providing race-neutral explanations for the exercise of their peremptory strikes. Thus, we must decide whether the trial court thereafter properly determined that plaintiff did not establish purposeful discrimination.

*1148 Prospective Juror Scott:

Defendants' counsel indicated that Ms. Scott was struck because she had previously filed a claim as the result of an automobile accident. When the trial court noted that other prospective jurors had filed insurance claims who had not been struck by the defense, defendant's counsel responded that this was the only reason he had written next to Ms. Scott's name. In light of the fact that the trial court denied the Batson challenge, it apparently believed this explanation was not a pretext for discrimination. We agree.
The fact that a party's counsel excuses one person with a particular characteristic and not another similarly situated person does not in itself show that the explanation was a mere pretext for discrimination. The accepted juror may have exhibited traits which the challenging party could have reasonably believed would make him desirable as a juror. Collier, 553 So.2d at 822.
After reviewing the entire voir dire, it is apparent that although some of the prospective jurors who were not challenged by the defense had filed insurance claims for personal injuries received as the result of automobile accidents, these prospective jurors had either filed claims with their own insurance companies (as opposed to filing with the tortfeasor's insurer) or were of a different political affiliation than Ms. Scott, who was a Democrat.
The trial court had the first opportunity to question the prospective jurors, followed by plaintiff's counsel and finally, defendants' counsel. Thus, by the time the defense had an opportunity to question the prospective jurors, most of the relevant questions and issues had been asked and addressed. Particularly, as to each prospective juror who responded affirmatively to having filed an insurance claim for personal injuries, the trial court and plaintiff's counsel sought information about the general details of the claim. Additionally, the political affiliation information was elicited by plaintiff's counsel. It is also obvious from the record that defendants' counsel desired a conservative jury, which explains his interest in the prospective jurors' political affiliations. Accordingly, we cannot say that the trial court erred in concluding this was a legitimate, race-neutral explanation under the circumstances. See State v. Williams, 610 So.2d 991, 1003 (La. App. 1st Cir.1992).

Prospective Juror Dyer:
Ms. Dyer was struck because of her prior service on a jury that had rendered a verdict in favor of the plaintiff. Prior service on a civil jury, especially one ending in a verdict favorable to the plaintiff, is a persuasive race-neutral explanation for a defendant's exercise of a peremptory challenge. See State v. Mamon, 26,337, p. 18 (La.App. 2nd Cir. 12/16/94); 648 So.2d 1347, 1359, writ denied, 95-0220 (La.6/2/95); 654 So.2d 1104.

Prospective Juror Reynolds:
Mr. Reynolds was struck because he was a thirty-five year old, divorced military retiree who did not own a home.[3] Strict liability was one of the theories of recovery advanced by plaintiff. Thus, we find that a prospective juror's ownership or non-ownership of a home was a relevant consideration. Particularly, a person who was not a homeowner may have been less tolerant of even the slightest imperfection in or upon property. Accordingly, we find the fact that Mr. Reynolds was not a homeowner to be a persuasive, race-neutral explanation under the particular circumstances of this case.[4]

*1149 Prospective Juror Brand:

Ms. Brand was struck because of her expressed perception that she had been treated unfairly by an insurance company with which she had filed a personal injury claim as the result of an automobile accident. The possibility of bias because of a perceived former unpleasant experience with an insurance company is a legitimate racially neutral ground for exercising a peremptory challenge. See Smith v. Lincoln General Hospital, 27,133, p. 24 (La.App. 2nd Cir. 6/21/95); 658 So.2d 256, 271, writ denied, 95-1808 (La.10/27/95); 662 So.2d 3.

Prospective Juror Sterling:
Mr. Sterling was struck because the defendants' counsel felt that during voir dire, Mr. Sterling was looking at him, but was not nodding his head like the other prospective jurors. Additionally, defense counsel felt that Mr. Sterling was acting independently from the other jurors. The Louisiana Supreme Court has stated that "eye contact (or lack of it), body language, and other sense impressions" are recognized as important factors in decisions to exercise peremptory challenges. State v. Seals, 95-0305, p. 6 (La.11/25/96); 684 So.2d 368, 375, cert. denied, ___ U.S. ____, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); See Williams, 610 So.2d at 1003. Additionally, a prospective juror's unresponsiveness to parts of the voir dire proceedings, as well as inattentiveness to a party or disinterest in a matter, are race-neutral explanations sufficient to warrant a finding that blacks have not been systematically excluded from the jury. See Collier, 553 So.2d at 820-822; State v. Bolden, 95-749, p. 39 (La.App. 3rd Cir. 4/17/96); 680 So.2d 6, 28, writ denied, 96-1272 (La.11/22/96); 683 So.2d 286 (citing State v. Aubrey, 609 So.2d 1183, 1187 (La.App. 3rd Cir.1992)); Mamon, 26,337 at p. 19; 648 So.2d at 1359; Johnson, 621 So.2d at 1171; State v. Knighten, 609 So.2d 950, 955 (La. App. 4th Cir.1992); State v. Manuel, 517 So.2d 374, 376 (La.App. 5th Cir.1987). The trial court observed the voir dire questioning of Mr. Sterling and thus, was in the best position to discern the truthfulness of the defense's explanation for challenging Mr. Sterling. Johnson, 621 So.2d at 1171; Knighten, 609 So.2d at 954.
For these reasons, we find that the trial court did not err in denying plaintiff's Batson challenge because plaintiff did not carry the ultimate burden of proving purposeful discrimination. This assignment of error lacks merit.

JURY VENIRE
Plaintiff also complains about the selection and composition of the jury venire. Particularly, plaintiff contends he did not have a competent or desirable jury venire from which to select jurors because the venire was composed of persons who had been rejected or not selected as jurors in the course of other trials, earlier in the week. Plaintiff further contends that the jury venire was conservative as a result of the Nineteenth Judicial District jury venire selection process. Consequently, plaintiff argues he did not have a representative cross section from which to choose his jury.
The subject trial began on a Wednesday. Other jury trials had commenced on Monday and Tuesday of the same week. Those persons not chosen to serve on the juries earlier in the week were returned to the central jury pool from which the subject jury venire was chosen. After the jury was chosen, but before it was sworn, plaintiff raised the subject objection, which was overruled by the trial court.
The qualification and exemption of jurors and the method of choosing and summoning the general venire are provided by special laws. LSA-C.C.P. art. 1751. Louisiana Revised Statutes 13:3051 provides specific grounds for attacking the general venire. Pursuant to this statute, "[a] general venire or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury." Additionally, district courts may, by local rules, create and provide for the manner of administering a central jury pool for civil cases. LSA-C.Cr.P. art. 409.3.
In the present case, plaintiff does not contend that a process whereby jurors *1150 rejected or not selected in one proceeding are returned to the central jury pool for subsequent selection to serve on a jury in a different proceeding is contrary to the local rules of the Nineteenth Judicial District. Instead, plaintiff appears to contest whether such a process is authorized by law. We find that the part of the jury selection process that plaintiff contests is specifically authorized by LSA-C.Cr.P. art. 409.3(F). State v. Dominick, 506 So.2d 193, 196 (La.App. 5th Cir.1987). Thus, plaintiff is left with a general challenge as to the composition of the jury venire.
A party challenging a jury venire has the burden of establishing fraud or irreparable injury in the jury selection process. Plaintiff has not met this burden. There is no evidence in the record that any individual or group was arbitrarily excluded from the jury panel. See State v. Simpson, 475 So.2d 1115, 1116 (La.App. 4th Cir.1985). Accordingly, this assignment is without merit.[5]

EXISTENCE OF A DEFECT
Plaintiff asserts the jury erred in failing to find that a defect was present on defendants' premises that created an unreasonable risk of harm. Plaintiff brought this action under both negligence and strict liability theories of recovery. However, in his brief, plaintiff focuses on the strict liability theory of recovery. Since the only difference between these two theories of recovery is that knowledge of the condition must be proven to establish negligence, but not to establish strict liability, we will focus on the strict liability theory of recovery in this opinion. See Batiste v. Bevan, 634 So.2d 893, 896 (La.App. 1st Cir.1993).
To recover under strict liability, the plaintiff must prove that: (1) the thing which caused the damage was in the custody of the defendant; (2) the thing was defective because it had a condition that created an unreasonable risk of harm to the plaintiff; and (3) the defective condition of the thing caused the plaintiff's injuries. Batiste, 634 So.2d at 896. Under this theory, the absence of an unreasonably dangerous condition of the thing implies an absence of a duty on the part of the defendant. Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La.1991); Batiste, 634 So.2d at 896. Thus, absent proof of a defect, a strict liability claim must fall. Batiste, 634 So.2d at 896.
There is no dispute that the premises were in the custody of defendants at the time of the accident. Additionally, the parties do not dispute the fact that the apartment complex lawn contained a hole or depression. Thus, the critical issue is whether this hole or depression constituted a defect.
A defect is a condition that creates an unreasonable risk of harm to persons on the premises. Oster, 582 So.2d at 1288; Tillman v. Johnson, 94-0480, p. 5 (La.App. 1st Cir. 3/3/95); 652 So.2d 605, 609. However, not every minor imperfection or irregularity will give rise to liability. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Tupper v. State Farm Fire & Casualty Company, 553 So.2d 488, 491 (La.App. 3rd Cir.1989). Relevant to the issue of whether the hole or depression posed an unreasonable risk of harm is the physical location and configuration of the hole or depression, including its depth and length, facts which are disputed by the parties.
At trial, plaintiff testified the hole was possibly eight inches deep. At an earlier deposition, he estimated the hole was as much as twelve inches deep. However, the defense witnesses testified the depression was at best, only two inches deep. Photographs taken of the hole or depression by the defense were admitted into evidence without *1151 objection. The plaintiff did not have any photographs taken of the hole or depression. From the photographs, one of which contains a tape measure inserted into the hole, it appears that the hole is between two and five inches deep. The exact measurement is not clear because of the angle from which the photograph was taken. However, the photographs arguably support a conclusion that the hole or depression itself was only two inches deep and that blades of grass create the appearance that the hole was as much as five inches deep. Clearly, the photographs dispel any assertion that the hole was more than six inches deep. The length of the hole is less clear from the photographs. However, the testimony of the witnesses at trial establishes that the length was between five and twelve inches.
In finding that a defect was not present on defendants' premises, the jury could have concluded the hole or depression was as shallow as two inches deep and less than a foot long. The findings pertaining to the physical configuration of the hole or depression are factual findings of the jury, governed by the manifest error standard of review. See Delaune v. Medical Center of Baton Rouge, Inc., 95-1190, p. 9 (La.App. 1st Cir. 10/25/96); 683 So.2d 859, 867, writs denied, 97-0218 and 97-0243 (La.3/21/97); 691 So.2d 84; Phipps v. Amtrak, 94-1876, p. 5 (La.App. 1st Cir. 11/20/95); 666 So.2d 341, 343-344, writ denied, 95-3012 (La.2/28/96); 668 So.2d 368. Accordingly, unless the possible and apparent finding that the hole or depression was shallow and small is manifestly erroneous or clearly wrong, it may not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is conflict of testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell, 549 So.2d at 844; Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973).
After a thorough review of the record in its entirety, we find there is a reasonable factual basis for the jury's apparent finding regarding the size of the hole or depression. Clearly, the testimony was conflicting regarding whether the hole or depression was as shallow as two inches or as deep as eight inches. Additionally, there was conflicting testimony regarding the length of the hole or depression. Based on the testimony of the defense witnesses and the depiction of the hole or depression in the photographs, the jury could have reasonably concluded the hole or depression in question was only two inches deep, and five inches long, and consequently, shallow and small.
Thus, the relevant issue becomes whether a two inch deep, five inch long hole or depression in an apartment complex lawn constitutes an unreasonable risk of harm. In finding that no defect existed on the premises, the jury effectively determined that the hole or depression was not unreasonably dangerous. The standard of review to be applied to this determination is disputed by the parties on appeal.
Plaintiff contends that the jury's finding that the hole or depression did not pose an unreasonable risk of harm is a legal determination, subject to de novo review. Contrarily, defendants contend that this determination is factual, and subject to the manifest error or clearly wrong standard of review. We find that under either standard, the jury did not err in finding the subject hole or depression did not pose an unreasonable risk of harm to plaintiff under these circumstances.[6]
A determination of whether a thing presents an unreasonable risk of harm *1152 entails a myriad of considerations and cannot be applied mechanically. Oster, 582 So.2d at 1288. The unreasonable risk of harm determination requires the court to balance the likelihood and magnitude of harm against the utility of the thing, as well as consider a broad range of social, economic and moral factors, including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident. Oster, 582 So.2d at 1289; Phipps, 94-1876 at p. 4; 666 So.2d at 343. In this respect, the court must also consider whether the duty imposed upon the custodian of the thing was meant to prevent the type of harm which occurred. Oster, 582 So.2d at 1289; Jones v. Peyton Place, Inc., 95-0574, pp. 7-8 (La.App. 4th Cir. 5/22/96); 675 So.2d 754, 761. Moreover, the obligation placed by LSA-C.C. art. 2317 upon a landowner to maintain his land free from defects does not encompass every injury that happens to occur on his land. Oster, 582 So.2d at 1289.
While we recognize that a two inch deep, five inch long hole or depression in an apartment complex lawn lacks obvious utility, we also find that the likelihood of the subject hole or depression causing injury is minimal. This finding is supported by the particular facts of this case.
It is noteworthy that since 1980, Joe Hamilton, Sr., ("Mr.Hamilton"), the lawn maintenance man at the apartment complex, had mowed the lawn on which the subject hole or depression was present. During this time, he never encountered the hole or depression with either the mower wheels or his own feet. Additionally, plaintiff testified he had walked across the same area of the lawn thousands of times without noticing or encountering the hole or depression. His wife testified that she likewise had walked the subject area several times without seeing the hole. There were no other complaints or reported incidents about any other person noticing or encountering the hole or depression.
We also note as significant importance in our resolution of this matter the location of the subject hole or depression and the area surrounding the lawn. The hole or depression was located on a small lawn which was bordered on one side by the parking lot and on the other three sides by sidewalks that led to the apartment buildings. These sidewalks were designed for use by apartment complex residents and guests to get to their respective units. Accordingly, the hole or depression was not located in an area designed and designated for regular and frequent foot traffic. Cf. Landry v. State, 495 So.2d 1284, 1288 (La.1986) (eight inch deep hole located in the direct path of necessarily frequent pedestrian travel posed an unreasonable risk of harm).
We further note that plaintiff's choice to traverse the lawn at night in his physical condition, as opposed to utilizing the near-by sidewalks to get to his apartment unit, lacked social utility. See Moore v. St. Bernard Parish Police Jury, 619 So.2d 719, 721 (La.App. 4th Cir.), writ denied, 625 So.2d 1035 (La. 1993). In this respect, plaintiff admitted that nothing prevented him from using the sidewalk and that he took the "short cut" because he was "basically" lazy.
After a thorough review of the record, we are unable to say that this minor imperfection or irregularity in the apartment complex lawn posed an unreasonable risk of harm to plaintiff. See Moore, 619 So.2d at 721 (depression in lawn caused by tires of a van did not constitute an unreasonable risk of harm to a person traversing the lawn at night, instead of using near-by sidewalk); Finley v. State Farm Insurance Company, 598 So.2d 537, 540-541 (La.App. 1st Cir.1992) (hole in lawn that was about a foot in diameter and no more than three inches deep did not pose an unreasonable risk of harm to person crossing the lawn); Stone v. Trade-Mark Homes, Inc., 431 So.2d 61, 62 (La.App. 1st Cir.1983) (cup-shaped hole in lawn that was about seven inches in diameter and three inches deep did not pose unreasonable risk of harm to person mowing the lawn). The jury properly found that a defect was not present on the premises. Consequently, these assignments of error have no merit.

CONCLUSION
For the reasons expressed in this opinion, the judgment of the trial court is affirmed. *1153 Plaintiff is assessed with the costs of this appeal.
AFFIRMED.
NOTES
[1] The Honorable Ralph Tyson, Judge, 19th Judicial District Court, is serving as judge pro tempore by special designation of the Louisiana Supreme Court.
[2] Six months before the subject incident, plaintiff had sustained a work-related injury to his back which required surgery. At the time of the subject accident, he was still recuperating from the back surgery. After the accident at issue herein, plaintiff underwent surgery on his knee and a second surgery on his back.
[3] We note the record does not explicitly show that Mr. Reynolds did not own a home. However, it indicates that only some jurors raised their hands to acknowledge the fact that they were homeowners. Plaintiff has not contested the truthfulness of the defense's contention that Mr. Reynolds did not own a home.
[4] The trial court indicated that prospective juror Schoenbrodt did not own a home either, but was not struck by the defense. However, this fact does not affect our determination that the defense had a legitimate reason for striking Mr. Reynolds. See Collier, 553 So.2d at 822. As was the case with Ms. Scott, Mr. Schoenbrodt could have exhibited traits which the defense could have reasonably believed would make him desirable as a juror. In this respect, we note that Mr. Schoenbrodt was a Republican and Mr. Reynolds was a Democrat, a distinction which counsel for defendants deemed significant.
[5] We also find meritless plaintiff's assignment of error that defendants' exercise of peremptory challenges against all of the prospective black jurors, and the fact that the jury venire contained jurors who had not been selected to serve on juries in earlier proceedings, combined to deny plaintiff a fair trial by a randomly selected jury of his peers. We have found that both of these contentions lack individual merit and plaintiff provides no support for his proposition that the combination of these two individually meritless assignments of error breathes merit into them when considered together as another assignment of error.
[6] Plaintiff's contention is supported by First Circuit jurisprudence. See Delaune, 95-1190 at pp. 9-10; 683 So.2d at 867; Phipps, 94-1876 at pp. 5-6; 666 So.2d at 343-344; Green v. City of Thibodaux, 94-1000, pp. 7-8 (La.App. 1st Cir. 10/6/95); 671 So.2d 399, 403, writ denied, 95-2706 (La.2/28/96); 668 So.2d 366. However, the Third Circuit has held that the determination of whether a thing poses an unreasonable risk of harm is factual. See Tullis v. Rapides Parish Police Jury, 95-905, p. 4 (La.App. 3rd Cir. 1/17/96); 670 So.2d 245, 248, writ not considered, 96-0444 (La.3/29/96); 670 So.2d 1241. We note that the Supreme Court has not resolved this particular standard of review issue. See Boyle v. Board of Supervisors, 96-1158, pp. 1-2 (La.1/14/97); 685 So.2d 1080, 1081-1082.